PEOPLE v BREEDING

Docket No. 280708. Submitted January 7, 2009, at Detroit. Decided June
    16, 2009, at 9:15 a.m.

    David C. Breeding pleaded no contest in the Wayne Circuit Court to
        a charge of second-degree criminal sexual conduct and was sen-
        tenced to five years' probation. The court, Patricia S. Fresard, J.,
        thereafter determined that the defendant violated a condition of
        his probation prohibiting contact with children less than 16 years
        of age, revoked his probation, and sentenced the defendant to 38
        months to 15 years in prison. The Court of Appeals, CAVANAGH, P.J.,
        and JANSEN and DONOFRIO, JJ., denied the defendant's delayed
        application for leave to appeal in an unpublished order, entered
        October 23, 2007 (Docket No. 280708). The Supreme Court, in lieu
        of granting leave to appeal, remanded the case to the Court of
        Appeals for consideration, as on leave granted, whether the
        defendant's constitutional right to confront the witnesses against
        him was violated at his probation revocation hearing as a result of
        the admission of certain out-of-court statements. 481 Mich 884
        (2008).

        The Court of Appeals held:

        The federal circuit court of appeals cases that have held that
    Crawford v Washington, 541 US 36 (2004), which held that the
    Sixth Amendment generally forbids the introduction of out-of-
    court testimonial statements in a criminal prosecution, does not
    apply to probation revocation hearings are correct. The Sixth
    Amendment specifically applies only to criminal prosecutions. A
    probation revocation hearing is not equivalent to a criminal
    prosecution and the full panoply of rights due a defendant in a
    criminal prosecution does not apply to parole revocations. The
    Sixth Amendment right to confrontation articulated in Crawford
    did not apply to the defendant's probation revocation hearing.
    Rather, a due process standard applies in determining the admis-
    sibility of statements made by out-of-court declarants at probation
    revocations hearings regardless of whether the statements are
    testimonial or nontestimonial in nature. Although there is a
    limited due process right to confront witnesses at a probation
    revocation hearing, the defendant neither objected to the intro-

duction of the out-of-court statements nor requested the appearance of the declarants and failed to establish plain error affecting his substantial rights under a due process analysis. Hearsay was not the sole evidence relied on by the trial court, and the in-court testimony of the defendant's probation officer was sufficient by itself to enable the trial court to determine that a probation violation was proved by a preponderance of the evidence. The defendant did not establish an error affecting the trial court's decision that he violated a condition of probation.

Affirmed.

CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO CONFRONTATION — DUE PROCESS — PROBATION REVOCATION HEARINGS.

The Sixth Amendment right to confrontation articulated in *Crawford v Washington*, 541 US 36 (2004), which held that the Sixth Amendment generally forbids the introduction of out-of-court testimonial statements in a criminal prosecution, does not apply to probation revocation hearings; a due process standard applies in determining the admissibility of statements made by out-of-court declarants at probation revocation hearings regardless of whether the statements are testimonial or nontestimonial in nature.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Janet A. Napp*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Jacqueline J. McCann* and *Kim M. McGinnis*) for the defendant.

Before: FORT HOOD, P.J., and WILDER and BORRELLO, JJ.

BORRELLO, J. Defendant pleaded no contest to a charge of second-degree criminal sexual conduct (CSC), MCL 750.520c(1)(a), for engaging in sexual penetration with a person under the age of 13, and was sentenced to five years' probation. The trial court subsequently determined that defendant violated a condition of his probation prohibiting contact with children less than 16

years of age, revoked his probation, and sentenced him to 38 months to 15 years' imprisonment. This Court denied defendant's delayed application for leave to appeal. *People v Breeding*, unpublished order of the Court of Appeals, entered October 23, 2007 (Docket No. 280708). In lieu of granting leave to appeal, our Supreme Court remanded the case to this Court for consideration

> as on leave granted, of the defendant's claim that his constitutional right to confront the witnesses against him was violated by the trial court's admission, at the probation revocation hearing, of certain statements by out-of-court declarants. See *Crawford v Washington*, 541 US 36 (2004). In considering this claim, the Court of Appeals shall address whether the federal circuit Court of Appeals decisions addressing this issue are correct that *Crawford* does not apply to probation revocation hearings. See, e.g., *United States v Kelley*, 446 F3d 688 (CA 7, 2006); *United States v Rondeau*, 430 F3d 44 (CA 1, 2005); *United States v Hall*, 419 F3d 980 (CA 9, 2005); *United States v Kirby*, 418 F3d 621 (CA 6, 2005); *United States v Martin*, 382 F3d 840 (CA 8, 2004); and *United States v Aspinall*, 389 F3d 332 (CA 2, 2004). [*People v Breeding*, 481 Mich 884 (2008).]

We agree with the federal courts of appeals that have held that *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), which held that the Sixth Amendment generally forbids the introduction of out-of-court testimonial statements in a criminal prosecution, does not apply to probation revocation hearings. For the reasons set forth in this opinion, we affirm.

### I. FACTS AND PROCEDURAL HISTORY

Defendant was charged with first-degree CSC for engaging in fellatio with a person under 13 years of age, MCL 750.520b(1)(a), and two counts of distributing sexually explicit materials to a minor, MCL 722.675.

The victim was the son of defendant's former girlfriend. On November 30, 2004, defendant pleaded no contest to a single charge of second-degree CSC pursuant to a plea agreement. On December 21, 2004, the trial court sentenced defendant to five years' probation. One of defendant's probation terms was that he have no contact with children under 16 years of age and no unsupervised contact with his own children.[1]

In June 2005, defendant pleaded guilty of violating the curfew conditions of his tether. Defendant admitted that he received a call from a friend who told him that she was taking her children swimming at a local hotel and that he took his children to the hotel and met the friend and her children there. According to defendant, his friend was aware of his conviction. The trial court continued defendant's probation but ordered him to serve one year in jail. Thereafter, the trial court amended defendant's probation order. The amendment precluded defendant from having overnight visits with his children or any other children under the age of 16 years. Further, defendant's contact with his own children was required to be supervised by an adult approved by defendant's probation officer.

On August 18, 2006, the trial court authorized a bench warrant for defendant's arrest after a petition was filed alleging that defendant violated the condition that he not have contact with children under the age of 16 by having contact with his friend, Lisa Plummer, who had two small children. At a probation violation hearing on August 31, 2006, defendant's probation officer, Linda Hines, testified that on August 17, 2006, she investigated a complaint that defendant was having continuous contact with Lisa and her children. According to Hines:

---

[1] There were several other conditions to defendant's probation, but these conditions are not relevant to the issues presented in this appeal.

> Upon approach to [Lisa Plummer's] residence, I witnessed [defendant] coming out of the residence, and I pulled up behind some vehicles, so I couldn't really see whether he got in a car and left, either.
>
> So I called my supervisor and we discussed it and he decided to join me. . . . When he came, we approached the residence and knocked on the door. Miss Plummer came out and spoke with us, and we told her who we were, and that I had just witnessed [defendant] leaving her residence.
>
> When we approached the residence, there were two small children in the window waving and smiling . . . and Miss [Plummer] came out and we informed, like I said, why we were there. She admitted [defendant] had been there. She was unaware that he was not supposed to have any contact with children.
>
> I informed her, because of this, I would be contacting protective serves [sic], which I did, and they went over and investigated, and I spoke with a protective services worker on Tuesday, who indicated this was a relationship. He was having contact with the children, but the mother said he was never unsupervised with the children.

On cross-examination, Hines admitted that she did not see defendant actually leave the residence and that she did not see defendant near the children and did not observe if defendant spoke with, contacted, or touched the children. Hines also testified that Lisa admitted that defendant had been having contact with her children, but that defendant had never been with the children without supervision. It is unclear from the record if Lisa relayed this information to Hines or if Hines learned this information from the protective services worker. According to Hines, Lisa had told the protective services worker that she and defendant were beginning a romantic relationship. Lisa's mother, Wilma Plummer, also testified at the probation revocation hearing. Wilma Plummer testified that she knew that defendant was not allowed to have any contact

with children and that Lisa never let defendant around her children and that when she (Wilma) was with Lisa's children, defendant did not have contact with the children.

Following Wilma Plummer's testimony, the trial court asked if Lisa was present in court. Wilma replied, "No, she has got M.S. [multiple sclerosis]." According to defense counsel, Lisa had been in contact with child protective services and was concerned about coming to court. Defense counsel did not object to any of the testimony offered by Hines and did not ask the trial court to compel Lisa Plummer or the protective services worker to testify.

The trial court then issued its findings from the bench:

> The defendant has a condition of probation that he is to have no contact, not supervised, but no contact with children aged 16 or under, because of his status as a sexual offender of young children. He chooses to enter into, as stated by Lisa, stated by the probation officer that Lisa stated a beginning of a romantic relationship with a woman who by her mother's statement has M.S. and has two young children in the household. That is a clear violation of the conditions of the probation department and [the] court finds him guilty.

Following defense counsel's request for clarification of the trial court's ruling, the trial court stated:

> First of all, findings of the court are not based on what the mother [Wilma Plummer] said, whether the mother was present. She admitted the relationship isn't with her, it's with Lisa her daughter, and there is no—this mother, she's not there all the time. She is not there with the children all the time or with her daughter all the time. It is the beginnings [sic] of a relationship with a woman with two young children and his leaving from that house indicates he is in violation.

Defendant moved for reconsideration, arguing that there was no evidence to support the conclusion that he violated a condition of his probation by having contact with Lisa's children. At the sentencing hearing on September 18, 2006, the trial court denied the motion, observing that Hines had testified under oath that Lisa Plummer stated that defendant had been at her house and that she did not know that defendant was prohibited from having contact with children.

At the same sentencing hearing, Hines informed the trial court that she had received information from the child protective services worker that Lisa was now claiming that her relationship with defendant was purely platonic. The trial court was also made aware, for the first time, that Lisa and her children were involved in defendant's earlier probation violation. The court determined that this information made Wilma's testimony incredible. The trial court commented that "the court has additional information that she [Lisa] is a handicapped woman who has never come here to testify, and you [defense counsel] have had every opportunity to have her present, and that obviously puts it into issue here." Defense counsel asked the court to consider letters written by Lisa and Wilma.[2] Defendant stated during his allocution that he had not had contact with children and that he and Lisa are friends. The trial court revoked defendant's probation and sentenced him to a prison term of 38 months to 15 years under the sentencing guidelines.

---

[2] In a September 13, 2006, letter, Lisa Plummer wrote that she met defendant through their employment at Johnson Control and were strictly friends. She claimed that defendant provided transportation for her to medical appointments after she was diagnosed with M.S. and that "[defendant] has been honest with me since I meet [sic] him and always followed the rules of having no contact with my children."

The prosecutor and defendant's counsel later stipulated that the sentencing guidelines range should have been zero to 17 months. On April 16, 2007, the trial court granted defendant's motion for resentencing based on the stipulation. At the resentencing hearing on April 30, 2007, the prosecutor argued that the sentencing guidelines had been incorrectly scored for purposes of the stipulation, but that the trial court could avoid this issue by finding substantial and compelling reasons for a departure. Defendant's counsel proposed that defendant be continued on probation, expressing her belief that defendant was starting a romantic relationship with Lisa at the time of his second probation violation, and that defendant should have asked the court for permission to have supervised contact with Lisa's children. She asserted that while defendant did not do that, he "didn't have unsupervised contact with them. . . . We are talking about him being with them in the company of other adults who are responsible for them." The trial court did not change the guidelines range that had been stipulated, but found substantial and compelling reasons to depart from the guidelines range and reimposed the sentence of 38 months to 15 years, with credit for 617 days served. This appeal ensued.

## II. ANALYSIS

Defendant argues that the admission of out-of-court, testimonial hearsay statements at his probation revocation hearing violated his Sixth Amendment right to confrontation and urges this Court to apply *Crawford* to a probation revocation hearing. Defendant also argues that the admission of the hearsay evidence violated his due process rights.

### A. STANDARD OF REVIEW

"The decision to revoke probation is a matter within the sentencing court's discretion." *People v Ritter*, 186 Mich App 701, 706; 464 NW2d 919 (1991).

Whether defendant was denied his Sixth Amendment right to confrontation is a constitutional question that this Court reviews de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

A trial court's discretionary authority regarding the admission of evidence at a probation revocation hearing is broad. MCR 6.445(E)(1); MRE 1101(b)(3). Except for the rules of evidence pertaining to privileges, a trial court "need not apply the rules of evidence" in a probation revocation hearing. MCR 6.445(E)(1). This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002). The abuse of discretion standard recognizes that " 'there will be circumstances in which . . . there will be more than one reasonable and principled outcome.' " *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006), quoting *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Under this standard, "[a]n abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).

### B. *CRAWFORD* DOES NOT APPLY TO PROBATION REVOCATION PROCEEDINGS

Before addressing the applicability of *Crawford* to probation revocation proceedings, we first make some observations about probation. Probation is a matter of grace, not of right, and the trial court has broad

discretion in determining the conditions to impose as part of probation. *People v Oswald*, 208 Mich App 444, 446; 528 NW2d 782 (1995); see also MCL 771.4. Therefore, when a judge imposes probation, it is "revocable on the basis of a judge's findings of fact at an informal hearing, and largely at the judge's discretion." *People v Harper*, 479 Mich 599, 626; 739 NW2d 523 (2007). This Court has recognized that the scope of a probation violation hearing is limited and that a probationer's rights at a probation violation hearing are not as broad as the rights afforded to a defendant in a criminal trial. "Probation violation hearings are summary and informal and are not subject to the rules of evidence or of pleading applicable in a criminal trial. The scope of these proceedings is limited and the full panoply of constitutional rights applicable in a criminal trial do not attach." *People v Pillar*, 233 Mich App 267, 269; 590 NW2d 622 (1998). See also *Ritter, supra* at 705-706.

In *Crawford*, the Court held that in a criminal prosecution, the introduction of an out-of-court testimonial statement is precluded unless the witness is unavailable and the defendant has previously had an opportunity to cross-examine the witness. *Crawford, supra* at 68. The preclusion of such statements is derived from the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI; *Crawford, supra* at 61. The question before us is whether the same Sixth Amendment rights extended to a defendant in a criminal trial under *Crawford* are also applicable to a probationer at a probation revocation hearing.

While the Sixth Amendment right to confrontation, like the right to counsel, is a fundamental right made applicable to states through the Fourteenth Amend-

ment, *Pointer v Texas*, 380 US 400, 403; 85 S Ct 1065; 13 L Ed 2d 923 (1965), the Sixth Amendment specifically applies only to "criminal prosecutions . . . ." US Const, Am VI. The United States Supreme Court has long recognized that a parole revocation hearing, which is analogous to the probation revocation hearing at issue in the present case, is not equivalent to "a criminal prosecution[.]" *Morrissey v Brewer*, 408 US 471, 480; 92 S Ct 2593; 33 L Ed 2d 484 (1972). See also *Ritter, supra* at 705 ("Revocation of probation is not a part of a criminal prosecution."). In *Morrissey,* the Supreme Court stated: "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey, supra* at 480. The reason that the full protection for defendants in criminal proceedings does not apply to such a revocation is that the "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."[3] *Id. Morrissey* clearly set forth the principle that parole or probation revocations are separate and distinct legal proceedings from criminal prosecutions. Therefore, for defendant to prevail on this issue, he must demonstrate that the Sixth Amendment protections articulated in *Crawford* apply beyond the context of criminal prosecutions and specifically to a probation revocation hearing.

Several federal circuits have addressed this issue and concluded that *Crawford* does not apply to parole or

---

[3] In *Ritter, supra* at 705-706, this Court similarly concluded that probation revocation deprives a probationer of the conditional liberty that is properly dependent on observance of the terms of the probation order, rather than the absolute liberty to which every citizen is entitled, and that a probationer in a probation revocation hearing is not entitled to the full range of due process rights associated with a criminal trial.

probation revocation hearings. The rationale for these decisions is that the Sixth Amendment only applies to criminal prosecutions, and postconviction proceedings for violations of a condition of release is not part of a criminal prosecution. *United States v Kelley*, 446 F3d 688, 691 (CA 7, 2006) ("Because revocation proceedings are not criminal prosecutions, Sixth Amendment rights are not implicated."); *United States v Rondeau*, 430 F3d 44, 47 (CA 1, 2005) ("Given that the Confrontation Clause focuses on 'criminal prosecutions,' we have not found the Clause to be applicable to post-conviction proceedings."); *United States v Hall*, 419 F3d 980, 985-986 (CA 9, 2005); *United States v Kirby*, 418 F3d 621, 627 (CA 6, 2005); *United States v Aspinall*, 389 F3d 332, 342-343 (CA 2, 2004); *United States v Martin*, 382 F3d 840, 844 n 4 (CA 8, 2004). We agree with the federal courts that have concluded that the Sixth Amendment right to confrontation, as defined and applied in *Crawford*, does not apply to probation revocation proceedings. Because probation occurs after the end of a criminal prosecution, probation revocation proceedings are not a stage of a criminal prosecution. *Morrissey, supra* at 480; *Gagnon v Scarpelli*, 411 US 778, 782; 93 S Ct 1756; 36 L Ed 2d 656 (1973). See also *Ritter, supra* at 705. Therefore, we reject defendant's claim that the Sixth Amendment right to confrontation articulated in *Crawford* applied at his probation violation proceeding.[4] Rather, a due process standard applies in determining the admissibility of statements made by out-of-court declarants at probation violation proceedings, regardless of whether the statements are testimonial or non-testimonial in nature. *Morrissey, supra* at 481-489; see also *Hall, supra* at 986.

---

[4] Defendant conceded during oral argument that no state or federal court that has examined this issue has applied *Crawford* to probation or parole revocation hearings.

C. DUE PROCESS AND THE RIGHT TO CONFRONTATION
AT PROBATION REVOCATION HEARINGS

Defendant next argues that even if *Crawford* is inapplicable to probation revocation hearings, he still has a due process right to confront witnesses against him in a probation revocation proceeding. Because defendant failed to object to the alleged hearsay testimony at the probation revocation hearing, we review the issue for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A plain error is an error that is clear or obvious. *Id.* To establish that a plain error affected substantial rights, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings. *Id.*

Probationers in Michigan have a right to confront witnesses in a probation revocation hearing pursuant to MCR 6.445(E)(1), which states:

> Conduct of the Hearing. The evidence against the probationer must be disclosed to the probationer. *The probationer has the right to be present at the hearing, to present evidence, and to examine and cross-examine witnesses. The court may consider only evidence that is relevant to the violation alleged, but it need not apply the rules of evidence except those pertaining to privileges.* The state has the burden of proving a violation by a preponderance of the evidence. [Emphasis added.]

In addition, probationers also have certain due process rights at such a hearing because of the potential loss of liberty. *Pillar, supra* at 269, citing *Gagnon* and *Morrissey*. The liberty interest brings the probationer within the protection of the Fourteenth Amendment, even though revocation is not a stage of a criminal prosecution. *Morrissey, supra* at 482. Furthermore, the due process rights applicable to a probation revocation

hearing allow for procedures that are more flexible than those required during a criminal prosecution. "[T]he process [of admitting evidence at a probation revocation hearing] should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* at 489.

In *Morrissey*, the Supreme Court articulated the "minimum requirements of due process" in a parole revocation hearing, which include

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) *the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)*; (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. [*Id.* at 489 (emphasis added).]

In *Gagnon*, the Supreme Court held that the due process requirements in parole revocation proceedings also apply to probation revocation proceedings. *Gagnon, supra* at 782.

Federal and state courts that have ruled that *Crawford* does not apply to probation or parole revocation hearings have nevertheless recognized that probationers or parolees in such proceedings must still be afforded a limited due process right to confrontation. See *Rondeau, supra* at 48; *Hall, supra* at 986 ("[Defendant] nevertheless enjoys a due process right to confront witnesses against him during his supervised release proceedings, as the Supreme Court held over thirty years ago in *Morrissey*."); *Martin, supra* at 844; *Reyes v State*, 868 NE2d 438, 440 (Ind, 2007).

On the basis of *Morrissey*'s holding that the right to confrontation could only be denied for "good cause," courts have adopted two principal methods for establishing whether evidence has been admitted at a probation revocation hearing in violation of the limited due process right to confrontation and cross-examination. In *Reyes*, the Indiana Supreme Court explained the two methods:

> In one, the trial court employs a balancing test that weighs the probationer's interest in confronting a witness against the interests of the State in not producing the witness. *E.g., United States v. Martin*, 382 F.3d 840, 844-45 (8th Cir. 2004). In the balancing test, the State is required to show good cause for denying confrontation. *United States v. Rondeau*, 430 F.3d 44, 48 (1st Cir. 2005). In another test, the trial court determines whether the evidence reaches a certain level of reliability, or if it has a substantial guarantee of trustworthiness. *E.g., United States v. Kelley*, 446 F.3d 688, 692 (7th Cir. 2006). The requirement, found in *Morrissey*, 408 U.S. at 489, that the trial court find "good cause" before denying the right to confrontation plays an explicit role when a trial court performs a balancing test; however this does not mean that *Morrissey*'s good cause requirement is not addressed in the substantial trustworthiness test. . . . [T]he substantial trustworthiness test implicitly incorporates good cause into its calculus. [*Reyes, supra* at 441.]

Defendant urges this Court to adopt the balancing test set forth in *Martin* and *Rondeau* and reject the substantial trustworthiness test adopted by the Indiana Supreme Court in *Reyes* and by the Seventh Circuit Court of Appeals in *Kelley*. We decline defendant's invitation to adopt either method for establishing the admissibility of hearsay evidence in this matter for two reasons. First, defendant failed to make a request to cross-examine Lisa Plummer or the protective services worker and, second, defendant failed to object to any of

the alleged hearsay evidence that was admitted at the probation revocation hearing.

Before the application of a balancing test, the defendant must have objected to the introduction of hearsay evidence or made a request to cross-examine an adverse witness. See *United States v Stanfield*, 360 US App DC 305, 319; 360 F3d 1346 (2004). During defendant's probation revocation hearing, defense counsel did not object to any of the alleged hearsay evidence and did not request the appearance of either Lisa Plummer or the protective services worker. To the contrary, the record indicates that defense counsel responded to the trial court's inquiry regarding whether Lisa Plummer was present by attempting to explain and justify her nonappearance. Even when defendant moved for reconsideration of the trial court's finding of a probation violation, defense counsel failed to argue that Lisa Plummer should have been produced for cross-examination under oath. Rather, defense counsel offered a letter written by Lisa for the trial court's consideration at the hearing. Defendant's failure to object to any of the alleged hearsay statements also precludes this Court from deciding which method we would adopt in determining the admissibility of hearsay evidence in a probation revocation hearing because there was no objection or evidentiary ruling below. Thus, the record is insufficient for this Court to determine whether the balancing test or the substantial trustworthiness test was satisfied. As already stated, rather than request the attendance of the individual from whom most of the alleged hearsay statements were elicited, defense counsel explained and justified her absence, stating that "she was concerned about coming to court." A defendant should not be allowed to assign error to something that his own counsel deemed proper. *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998). "To do so would allow a defendant to harbor error as an appellate parachute." *Id.*

In the present case, defendant failed to object to any alleged hearsay testimony at the probation revocation hearing, and he did not request that the declarants be produced for purposes of cross-examination. In the absence of an objection or request for cross-examination, the trial court was not obligated to engage in either a balancing test or a substantial trustworthiness inquiry to determine the admissibility of hearsay testimony. Thus, on these facts, we decline defendant's invitation to adopt a method for establishing the admissibility of hearsay testimony in a probation revocation hearing.

We further hold that defendant has failed to establish a plain error affecting his substantial rights under a due process analysis. To establish that his substantial rights were affected, defendant must establish an error affecting the trial court's decision that defendant violated his probation. *Carines, supra* at 763. We find no such error in this case.

A trial court must base its decision that a probation violation was proven on verified facts in the record. *Pillar, supra* at 270. The evidence, viewed in a light most favorable to the prosecution, must be sufficient to enable a rational trier of fact to find a probation violation by a preponderance of the evidence. *People v Ison*, 132 Mich App 61, 66; 346 NW2d 894 (1984). Where resolution of a factual issue turns on the credibility of witnesses or the weight of evidence, deference is given to the trial court's resolution of these issues. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000).

Hearsay is generally defined as an out-of-court statement offered in evidence to prove the truth of the matter asserted. See MRE 801(c). A statement is an oral or written assertion, or nonverbal conduct intended as

an assertion. MRE 801(a). In this case, Lisa Plummer did not testify at the probation violation hearing. Her statements were not offered to establish the truth of the matters asserted with respect to whether she knew that defendant was not to have contact with children under 16 years of age, or whether she knew if such contact was required to be supervised; rather, her statements were offered to demonstrate a state of mind that attempted to justify or explain contact between defendant and her children. Under traditional hearsay rules, a statement offered into evidence to demonstrate a person's state of mind is not hearsay. *People v Fisher*, 449 Mich 441, 449; 537 NW2d 577 (1995).

However, Hines testified that Lisa Plummer "admitted [defendant] had been there." This testimony was clearly offered for the truth of the matter asserted, and it went to the heart of whether defendant violated the condition of his probation that he not have contact with children under 16 years of age. Unsworn verbal allegations are generally the least reliable type of hearsay to establish a probation violation. *United States v Comito*, 177 F3d 1166, 1171 (CA 9, 1999). But corroboration may give credence to hearsay evidence. See *Hall, supra* at 987-988. In this case, unlike in *Pillar, supra* at 269, where the only evidence of a probation violation was information in a police report regarding the defendant's arrest, there was nonhearsay evidence to support the trial court's finding that defendant violated his probation. Specifically, Hines testified that she personally witnessed defendant leaving Lisa Plummer's residence when two small children were present in the residence. Hines did acknowledge on cross-examination, when asked if she knew if defendant came out of Lisa Plummer's house, came from the backyard, or came from the driveway, that she did not actually see defendant leave the house. However, it is for the trial court to determine

the credibility of witnesses and weigh conflicting evidence. *Sexton, supra* at 752. Furthermore, it was undisputed that defendant and the children's mother were involved in some type of relationship. In addition, the trial court was informed, before revoking defendant's probation, that Lisa Plummer's children were also involved in defendant's first probation violation.

Contrary to defendant's argument on appeal, hearsay evidence was not the sole evidence relied on by the trial court in finding that defendant violated his probation. Because Hines testified that she witnessed defendant leaving Lisa Plummer's residence while two small children were inside, and the trial court must determine matters of credibility and the weight to give the evidence, we find that Hines's testimony alone was sufficient to enable the trial court to find a probation violation by a preponderance of the evidence. *Ison, supra* at 66. Accordingly, we conclude that defendant has not established an error affecting the trial court's decision that he violated his probation. *Carines, supra* at 763.

Affirmed.