# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LENARD JAMES, a/k/a LENARD KEITH
JAMES,

      Defendant-Appellant.

UNPUBLISHED
April 28, 2015


No. 319661
Wayne Circuit Court
LC No. 11-006786-FH

---

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's revocation of his probation on an underlying conviction of assault with intent to commit great bodily harm less than murder, MCL 750.84. The trial court sentenced defendant to 80 to 120 months' imprisonment. Because defendant was not afforded the requisite minimum procedures at the revocation hearing, we vacate his sentence and remand for a proper probation violation hearing and any other appropriate proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from defendant's assault of his former girlfriend, which occurred on June 8, 2011, in Detroit. For his assault, defendant was charged, as a fourth habitual offender, MCL 769.12, with assault with a dangerous weapon (felonious assault), MCL 750.82, and assault and battery against an individual with whom he had a dating relationship (domestic assault), MCL 750.81(2). The prosecutor offered to withdraw the habitual offense notice and the felonious assault and domestic assault charges in exchange for defendant's agreement to plead guilty to

---

[1] This Court originally denied defendant's delayed application of leave to appeal on January 23, 2014. See *People v James*, unpublished order of the Court of Appeals, entered January 23, 2014 (Docket No. 319661). On June 24, 2014, the Supreme Court remanded the case to the Court of Appeals for consideration as on leave granted. See *People v James*, 496 Mich 856; 847 NW2d 501 (2014).

-1-

assault with intent to commit great bodily harm less than murder as part of a *Cobbs*[2] agreement. Defendant accepted the offer and pleaded guilty to the agreed upon charge. On August 25, 2011, the trial court sentenced defendant consistent with the *Cobbs* agreement, requiring defendant to serve 12 months in jail, during which he was to complete the "Jail Plus Program," followed by 24 months of probation, which included completion of a drug treatment program.

While on probation, defendant failed to meet with his probation officer as required and was dismissed from the drug treatment program for nonparticipation. On August 20, 2012, the trial court issued a warrant for defendant's arrest for this first set of probation violations.

Before his arrest, defendant allegedly engaged in a series of other criminal offenses constituting a second set of probation violations. Defendant allegedly assaulted Tammy Fernandez, a woman with whom he had a romantic relationship, harassed Fernandez and her mother, Shirley Gorecki, threatened their lives, and killed Fernandez's dogs. Fernandez obtained a personal protection order against defendant. It was alleged that defendant also attempted to set fire to the home of Lilly Guzman, where he believed Fernandez had been living. In addition, defendant allegedly left Michigan without permission from the trial court and was arrested in Nevada for driving without a license.

Defendant was arraigned on the first set of probation violations at a hearing on May 21, 2013, and convicted after a violation hearing on June 5, 2013. At the hearing, the trial court agreed to sentence defendant to 60 days in jail. The trial court also indicated that it would extend defendant's probation for another year. The record does not contain a written order memorializing the trial court's decision.

On June 24, 2013, the trial court held a hearing, which, at the outset, was described as a hearing at which defendant was "to be arraigned on a violation of probation." The hearing concerned defendant's alleged probation violations stemming from the alleged conduct regarding Fernandez and Gorecki, as well as defendant's alleged decision to leave Michigan without permission. Early on during the hearing, defendant's counsel stated her belief that the hearing was "just the arraignment" at which point the trial court interjected, stating "I'm pretty sure he was already arraigned." In response, a Department of Corrections Officer stated that defendant had been arraigned on a different violation already—dismissal from the drug treatment program and failure to meet with his probation officer—and that the current hearing pertained to new allegations of probation violations. At this point, the trial court began to ask defendant's probation officer about defendant's assaultive and harassing behavior, then proceeded to ask Gorecki about some of the behavior. After hearing from Gorecki, defendant interjected, denying all of the allegations. The trial court did not swear any of the individuals who spoke at the hearing. It appears from the record that defense counsel was not given an opportunity to cross-examine anyone who spoke at the hearing.

After hearing from the individuals noted above, defense counsel began to argue that there was no evidence to support the new probation violations as they had previously been alleged in a

---

[2] See *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

warrant for defendant's arrest. At this point, the trial court, without stating that it had found a violation of probation or that it was revoking defendant's probation, interjected and sentenced defendant to 80 to 120 months' imprisonment.

## II. DISCUSSION

The prosecution bears the burden of proving a probation violation by a preponderance of the evidence. MCR 6.445(E)(1). A decision to revoke probation must be based on the verified facts in the record. *People v Breeding*, 284 Mich App 471, 487; 772 NW2d 810 (2009). This Court reviews a trial court's findings of fact for clear error, *People v Briseno*, 211 Mich App 11, 14; 535 NW2d 559 (1995), and its decision to revoke probation for an abuse of discretion, *People v Laurent*, 171 Mich App 503, 505; 431 NW2d 202 (1988). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Breeding*, 284 Mich App at 479.

In Michigan, probation is considered a matter of grace, and not a matter of right, and a defendant does not have a vested right in its continuance. See MCL 771.4; *People v Harper*, 479 Mich 599, 626; 739 NW2d 523 (2007). Upon a finding of probable cause to believe that a probationer has violated a condition of probation, a court may either: (1) issue a summons for the probationer to appear for arraignment; or (2) issue a warrant for the probationer's arrest. MCR 6.445(A). A defendant arrested for an alleged probation violation is entitled to an arraignment and a violation hearing before the trial court. See MCR 6.445(A)(2); MCR 6.445(B); MCR 6.445(E). Following the violation hearing, the trial court "must make findings in accordance with MCR 6.403[3]." MCR 6.445(E)(2). If the trial court revokes probation or imposes incarceration as part of the defendant's sentence, it "may not sentence the probationer to prison without having considered a current presentence report and having complied with the provisions set forth in MCR 6.425(B) and (E)." MCR 6.445(G). The decision to revoke probation involves a two-step process: (1) the trial determines whether defendant violated probation; and then, (2) considers whether the violation warrants a revocation of probation. *People v Pillar*, 233 Mich App 267, 269; 590 NW2d 622 (1998). If the court revokes probation, it "may sentence the probationer in the same manner and to the same penalty as the court might have done if the probation order had never been made." MCL 771.4. If the trial court revokes probation and sentences the probationer on the original offense, the legislative sentencing guidelines apply. *People v Hendrick*, 472 Mich 555, 560; 697 NW2d 511 (2005).

Probation revocation hearings "shall be summary and informal and not subject to the rules of evidence or of pleadings applicable in criminal trials." MCL 771.4. Nonetheless, probationers are entitled to certain due process rights at revocation hearings because such hearings involve the potential loss of liberty. *Breeding*, 284 Mich App at 483. The due process

---

[3] MCR 6.403 provides, in pertinent part:

> The court must find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment. The court must state its findings and conclusions on the record or in a written opinion made a part of the record.

rights to which a probationer is entitled do not include the full panoply of constitutional rights that are available at criminal trials. *Id.*; *Pillar*, 233 Mich App at 269. Instead, "[d]ue process requires only that the revocation proceedings be conducted in a fundamentally fair manner." *People v Ritter*, 186 Mich App 701, 706; 464 NW2d 919 (1991). The minimal due process protections afforded to a probationer include notice, an opportunity to present evidence and to present a defense, the right to cross-examine adverse witnesses, a neutral and detached trier of fact, and a written statement as to the finder of fact's reasons for revoking probation. *Gagnon v Scarpelli*, 411 US 778, 786; 93 S Ct 1756; 36 L Ed 2d 656 (1973). See also *Breeding*, 284 Mich App at 484. Along these lines, MCR 6.445(E)(1) provides that, at a probation violation hearing:

> The evidence against the probationer must be disclosed to the probationer. The probationer has the right to be present at the hearing, to present evidence, and to examine and cross-examine witnesses. The court may consider only evidence that is relevant to the violation alleged, but it need not apply the rules of evidence except those pertaining to privileges. The state has the burden of proving a violation by a preponderance of the evidence.

In addition, this Court has found that a probationer "has the right to insist that any witness who testifies against him take an oath or affirm to tell the truth." *People v Knox*, 115 Mich App 508, 514; 321 NW2d 713 (1982). In *Knox*, this Court noted that although the rules of evidence do not apply to a probation revocation hearing, it was nevertheless "fundamentally unfair to revoke the probation of a defendant on unsworn testimony where said defendant has demanded that all witnesses against him take an oath." *Id.* "To hold to the contrary would allow witnesses to lie without fear of criminal sanctions since the crime of perjury is not established unless falsehoods have been made under oath." *Id.*

Defendant was not afforded the minimal due process protections noted above. The record reveals that none of the witnesses against him was sworn, nor was he given an opportunity to cross-examine any of the witnesses against him. Instead, the record reveals that the proceeding appeared to begin as an arraignment, and ended with the trial court imposing a sentence, without finding a violation of probation or an express finding that defendant's probation should be revoked.[4] Although probation revocation hearings are to be, pursuant to MCL 771.4, "summary and informal," defendant's revocation hearing in the instant case did not afford him the minimum measure of due process required for such a hearing. See *Gagnon*, 411

---

[4] Although defendant never raised an objection to the procedure below, the lack of an objection could be explained by the manner in which the court conducted the hearing. Indeed, defense counsel indicated that the hearing was an arraignment only, and the Department of Corrections Officer agreed, correcting the trial court's assertion that defendant had already been arraigned on the alleged violations that were the subject of the hearing. Yet, at the end of the hearing, the trial court, with no forewarning, sentenced defendant on the original conviction. Furthermore, to the extent that defendant's failure to object to any of the above deficiencies—such as the failure to swear witnesses—could be found to constitute waiver, we note that our review is appropriate because defendant contends that his trial counsel was ineffective for failing to raise objections.

US at 786. Nor did it comply with the minimal procedures set forth in MCR 6.445(E)(1). As such, the hearing did not protect defendant's limited due process rights. Under these circumstances, we find that the trial court abused its discretion by revoking defendant's probation. The appropriate remedy is to vacate the revocation and sentence,[5] and to remand for a proper hearing. See *People v Rudnik*, 333 Mich 216, 218-219; 52 NW2d 671 (1952); *In re Bobowski*, 313 Mich 521, 523; 21 NW2d 838 (1946). See also *People v Taylor*, 104 Mich App 514, 517; 305 NW2d 251 (1981).

In light of our resolution of defendant's challenges to the procedures employed at his revocation hearing, we need not address the remainder of his challenges on appeal.

Vacated and remanded for a proper probation violation hearing and any other appropriate proceedings. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Henry William Saad

---

[5] In addition, we note that the sentence imposed by the trial court was a departure from the recommended guidelines range of 29 to 57 months for defendant's underlying offense of assault with intent to commit great bodily harm less than murder. The trial court gave no explanation for its departure. The failure to justify the departure would represent an independent basis for reversing defendant's sentence in this case. See *People v Smith*, 482 Mich 292, 299-300; 754 NW2d 284 (2008).