*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WAYNE O. MOORE,

Defendant-Appellant.

UNPUBLISHED
December 17, 2019

No. 345674
Barry Circuit Court
LC No. 2017-000553-FH

Before: METER, P.J., and O'BRIEN and TUKEL, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the trial court's revocation of his probation and subsequent resentencing. We affirm.

## I. BACKGROUND

On July 6, 2017, defendant pleaded no contest to assault with intent to commit criminal sexual conduct involving sexual penetration. MCL 750.520g. The conviction results from defendant's assault of the victim while the victim and her husband were staying in defendant's home. As the victim exited the bathroom, which was feet from defendant's room, defendant grabbed her and pushed her to his bed. Defendant then forced himself on her.

The victim wished to avoid trial and asked the prosecutor to offer defendant a plea deal below the sentencing-guidelines recommendation. Under this deal, the trial court sentenced defendant to one year in jail followed by probation. Defendant served his jail sentence and began probation. Defendant's probation required him to report any police contact to his probation officer within 24 hours of the contact, unless the contact occurred on a weekend, in which case defendant was to report the contact the following weekday. Another condition of

---

[1] *People v Moore*, unpublished order of the Court of Appeals, entered October 31, 2018 (Docket No. 345674).

defendant's probation prohibited defendant from engaging in threatening or intimidating behavior. In February 2018, defendant violated both of these conditions; subsequently, the prosecution moved to revoke defendant's probation.

At the probation-violation hearing, defendant's probation officer testified that defendant had contact with police on Saturday, February 10, 2018. Defendant, however, did not inform the probation officer of this contact until their scheduled meeting five days later on Thursday, February 15, 2018, *after* the probation officer asked about the incident, which was revealed to her through a police report.

Defendant's police contact relates to an incident that happened while he was sitting in his van at a Shell gas station. A gas-station cashier testified that, during her shift, she received a phone call from someone named "Mr. Kinney,"[2] indicating that someone in the parking lot was having health issues. According to the cashier, as she approached defendant's van, he started looking her up and down and asked her where she was from. The cashier testified that she was from Nashville, and defendant informed her of a woman he knew from Nashville who had been murdered; defendant then told her that he was just released from jail and was a registered sex offender. According to the cashier, defendant told her how long it had been since his last sexual encounter, asked her what she wore under her clothing, and invited her to his house. The cashier testified that, toward the end of the encounter, defendant told her that he knew where she worked and would check up on her. The cashier stated that she went inside, where she began to cry and explain the encounter to her coworkers, one of whom called the police. The cashier testified that she was uncomfortable with and intimidated by the encounter and debated whether to go back to work, fearful that defendant would follow her.

Defendant chose not to testify in his own defense. Rather, defendant moved for the admission of testimony from two witnesses: a snow-plow driver and the aforementioned Mr. Kinney. Defendant proffered that the witnesses would testify that Mr. Kinney arranged for a snow-plow driver to meet defendant at the gas station on the day in question. Defendant did not indicate, however, that either the driver or Mr. Kinney witnessed the interaction between defendant and the cashier. The trial court precluded the testimony, noting that the testimony was irrelevant because neither witness had observed the interaction between defendant and the cashier.

The trial court found defendant guilty of violating both the reporting and intimidation conditions of his parole, revoked defendant's probation, and set the matter for a sentencing hearing, before which the Presentencing Investigation Report (PSIR) would be updated. At the sentencing hearing, the trial court sentenced defendant outside of the sentencing-guidelines range to 72 to 180 months of imprisonment, noting that defendant violated his probation shortly after his release and had a history of inappropriate conduct. This appeal followed.

---

[2] No first name was provided in the lower court record or on appeal.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution presented insufficient evidence to find that defendant violated the conditions of his probation. We review de novo a challenge to the sufficiency of the evidence supporting the probation violation. *People v Girard*, 269 Mich App 15, 21; 709 NW2d 229 (2005). The record evidence must show by a preponderance of the evidence that a violation occurred, with deference given to the trial court's credibility determinations and weighing of the evidence. *People v Breeding*, 284 Mich App 471, 487; 772 NW2d 810 (2009) (citations omitted).]

The terms of defendant's probation required that he "report any arrest or police contact . . . to the field agent within 24 hours, weekends and holidays excepted." Defendant argues that he did not violate this condition because he was suffering from medical conditions or stress at the time of the incident and did not actually intend to violate the order. Defendant, however, offers no authority for his argument that this condition requires an intent not to report. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (internal citation and quotation marks omitted). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Miller*, 326 Mich App 719, 739; 929 NW2d 821 (2019) (internal citation and quotation marks omitted). Accordingly, by failing to provide any support for his assertion that his probation condition requires an intent not to report, defendant has abandoned this argument.

In any event, defendant has offered no evidence that he was actually suffering from a medical ailment that would prevent him from reporting. Defendant did not testify, and he did not call any witnesses to testify about his alleged medical issues or stresses. Rather, defense counsel only alluded to defendant's purported health issues and stress during closing argument. Defense counsel's statements, however, are not evidential. See, e.g., *People v Bahoda*, 448 Mich 261, 281 n 38; 531 NW2d 659 (1995) (explaining that attorney's closing argument is not evidence). Defendant's contact with the police occurred on Saturday, February 10, meaning that defendant was required to report the contact on Monday, February 12. Defendant, however, did not make such a report on that day. Rather, defendant admitted the contact three days later, and only after being questioned about it by his probation officer. Accordingly, even if defendant is correct that his probation condition required an intent not to report, the record evidence supports the conclusion that defendant intentionally failed to report the contact to his probation officer. The trial court did not err by finding that defendant violated the condition.

Defendant also challenges the trial court's conclusion that he engaged in threatening or intimidating behavior. The cashier testified that defendant told her that he was a registered sex offender who had not recently engaged in sexual activity, informed her of a woman he had known who was murdered, and invited her to his home. When the cashier did not respond positively to these comments, defendant told her that he knew where she worked and would be checking up on her. The trial court found the cashier's testimony credible and we must defer to its determination. *Breeding*, 284 Mich App at 487. We agree with the trial court that "calling

[this conduct] anything less than terrifying would not do it justice." Indeed, the victim testified that she was so intimidated by the exchange that she contemplated not returning to work out of fear that defendant would stalk her. The evidence was sufficient to support the trial court's finding that defendant violated the no-intimidation condition of his parole.

## B. PROPOSED WITNESSES

Next, defendant argues that the trial court erred by excluding a proposed witness from testifying because, according to defendant, that witness would have provided relevant information. We review the trial court's decision to exclude evidence for an abuse of discretion. *Breeding*, 284 Mich App at 479. The trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id*.

At a probation-violation hearing, the trial court "may consider only evidence that is relevant to the violation alleged." MCR 6.445(E)(1). Relevant evidence is that which bears on a fact of consequence. See MRE 401. Per defendant's offer of proof, the two witnesses would testify that Mr. Kinney contacted a snow-plow driver to meet defendant at the gas station. Defendant did not proffer that either proposed witness observed the encounter between defendant and the cashier or the subsequent police contact or had any knowledge of defendant's failure to report the police contact. That the snow-plow driver was allegedly meeting defendant at the gas station had no bearing on whether defendant threatened or intimidated the cashier or failed to report the subsequent police contact. Accordingly, the evidence was not relevant to the alleged violation and the trial court did not abuse its discretion by excluding it.

## C. PROBATION REVOCATION

Defendant also argues that the trial court erred by considering uncharged conduct when it revoked defendant's probation. A "probationer has the right to . . . (1) a factual determination that the probationer is in fact guilty of violating probation, and (2) a discretionary determination of whether the violation warrants revocation." *People v Pillar*, 233 Mich App 267, 269; 590 NW2d 622 (1998). If the trial court finds by a preponderance of the evidence that the probationer has violated a condition of probation, then the trial court may "revoke probation and impose a sentence of incarceration." MCR 6.445(G). The trial court's discretionary determination is reviewed for an abuse of discretion. *Breeding*, 284 Mich App at 479.

Defendant first argues that the trial court improperly considered uncharged conduct when deciding to revoke his probation. "[O]nly evidence relating to the charged probation violation activity may be considered at a violation hearing and only such evidence may provide the basis for a decision to revoke one's probation." *Pillar*, 233 Mich App at 270. The prosecution originally charged defendant with six probation violations—the two aforementioned violations and four violations related to defendant's inappropriate sexual comments to several Walgreen's employees. The prosecution, however, dropped the latter charges after learning that the conduct took place before defendant was on probation. Defendant argues that the trial court improperly considered the conduct with the Walgreen's employees when deciding to revoke his probation. We disagree. The record reveals that the trial court considered only the evidence related to defendant's intimidation of the gas-station cashier and subsequent failure to report police contact when deciding to revoke defendant's probation. While the trial court may have considered the

conduct with the Walgreen's employees at sentencing, there is no evidence that the trial court considered this conduct when determining whether to revoke defendant's probation.

Relatedly, defendant argues that the trial court abused its discretion in revoking probation because defendant was attempting to comply with his probation. Again, we disagree. A probationer does not attempt to comply with his probation by intimidating women and intentionally failing to report police contact. Rather, these violations are intentional acts that more than justify the trial court's decision to revoke probation, particularly given that defendant was on probation for a sex offense and committed the violations—one of which was of a sexual nature—within a short time of his release. The trial court's decision to revoke defendant's probation was not outside the range of principled outcomes.

## D. SENTENCING

Finally, defendant argues that the trial court abused its discretion by sentencing defendant outside of the sentencing-guidelines range. We review for reasonableness the trial court's decision to issue a sentence outside the sentencing-guidelines range. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).

A sentence is reasonable when it is proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Id*. The trial court must first score the sentencing guidelines and take them into account. *Lockridge*, 498 Mich at 391. If the trial court chooses to deviate from the sentencing guidelines, it must justify the deviation on the record by explaining "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (internal citation and quotation marks omitted). Relevant factors for determining whether an out-of-guidelines sentence is more proportionate than a sentence within the guidelines range "include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Id*. (internal citations omitted).

Defendant's PSIR recommended a sentence between 19 and 47 months of imprisonment; as noted previously, the trial court sentenced defendant outside of this range to serve a prison term of 72 to 180 months. The sentence was a significant deviation from the recommended range; however, we cannot conclude that the deviation was without justification.

Defendant's updated PSIR indicated that, over several decades, he had committed three felonies, 24 misdemeanors, and six probation violations. The trial court concluded that the sentencing-guidelines range did not accurately reflect this history and warranted a higher sentence. We agree. Prior record variable (PRV) 5 scores for prior misdemeanor offenses. MCL 777.55. PRV 5 is correctly scored at its maximum, 20 points, for seven or more prior misdemeanors. MCL 777.55(1)(a). Defendant had 17 more misdemeanors than was necessary to score PRV 5 at its maximum. Defendant's lack of capacity for reform was also evidenced by the fact that defendant engaged in inappropriate, threatening, sexually-charged behavior just a short time after his release for his sexual-assault conviction. Given defendant's history of sexual

and criminal impropriety, it is clear that any punishment that has previously befallen him has been inadequate. Accordingly, we agree with the trial court that an out-of-guidelines sentence was appropriate and that defendant's sentence of 72 to 180 months was reasonable.[3]

Affirmed.

/s/ Patrick M. Meter
/s/ Colleen A. O'Brien
/s/ Jonathan Tukel

---

[3] We also reject defendant's related contention that his sentence was unreasonable because his plea-agreement sentence was for a maximum of one year. Although the original sentence may have been acceptable as a result of the plea, once defendant violated probation, the trial court could impose a new sentence as long as it explained why the new sentence was reasonable and proportionate. The original sentence plays no part in resentencing after the grace of probation has been revoked. See MCL 771.4 ("If a probation order is revoked, the court may sentence the probationer in the same manner and to the same penalty as the court might have done if the probation order had never been made.").