*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

RASHAD DEVANTE SHORT,

   Defendant-Appellant.

UNPUBLISHED
September 5, 2024

No. 365537
Kent Circuit Court
LC No. 22-000879-FH

Before: SWARTZLE, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

After defendant took a firearm from another person during an altercation, defendant was convicted of one count of larceny from a person, MCL 750.357; two counts of assault with a dangerous weapon (felonious assault), MCL 750.82; and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant's trial was held jointly with a codefendant, Harold Brewer. We affirm.

## I. BACKGROUND

In June 2021, two groups of people were "hanging out" one night in a bus station parking lot in the early morning hours. At some point, defendant learned that another person there, Caleb Hayes, was armed. Hayes later testified that another person there wanted to see his gun, so Hayes emptied one bullet from the chamber, removed the clip, and passed it around. Defendant was being "forceful" with the gun, so Hayes took back the gun, reloaded it, and placed it back in his holster. Hayes claimed that defendant stated he was uncomfortable, and Hayes tried to reassure him that he was not trying to cause problems. Defendant testified that Hayes had cocked his gun, and defendant felt threatened. Defendant asked Hayes to remove a bullet from the chamber so that defendant would feel more comfortable. Defendant felt that Hayes was going to "rob, shoot, or kill" him. Defendant testified that he did not try to leave because he was not sure how to get everyone away from his car without them knowing that he was scared. Defendant felt "trapped" because Hayes and another individual, Travon Seawood, were armed, and defendant was not.

Defendant then "just reacted" and took the gun from Hayes. Hayes testified that defendant "snatched" the gun while Hayes was just leaning against a car, but another witness, Airess Adams,

-1-

testified that Hayes "pretty much was threatening [defendant] with a gun," including cocking and pointing it at defendant. Defendant and Seawood were then pointing guns at each other. Defendant was asked to return the gun, but defendant did not. Seawood then shot defendant, who dropped the gun and fell to the ground. Hayes attempted to pick up the gun, but Brewer picked it up first. Seawood began to drive away, and Brewer shot at Seawood's car. Seawood's vehicle crashed into a nearby building, and Seawood was later pronounced dead.

Brewer was charged with multiple offenses, including second-degree murder and assault with intent to commit murder. Defendant moved for a separate trial from Brewer, arguing that there was a risk of prejudice to his defense because Brewer was charged with murder. The trial court denied defendant's motion, stating that the trials, if done separately, would involve the same witnesses and similar exhibits. Further, the trial court found that "[t]he threat of antagonistic defenses [was] speculative." The trial court also noted that proper jury instructions would cure any potential prejudice.

At trial, the prosecutor cross-examined defendant and relied on the surveillance footage of the incident. Defendant admitted that until the time that defendant took Hayes's gun, Hayes had not pointed a gun at defendant.

After the prosecutor rested his case, defense counsel moved for a directed verdict as to the charge of larceny from a person. The defense also moved for a directed verdict of the felonious assault charges on the basis of self-defense and for lack of evidence that defendant pointed a gun at Hayes. The trial court denied the motion, stating that "there has been evidence all over the place about who is pointing guns at who, or even has weapons, about a lot of those kinds of things." Further, the trial court found that there was enough evidence on the issue of permanently depriving Hayes of his gun for the question to go to the jury.

The trial court instructed the jury on multiple occasions, including during jury selection, initial instructions, during testimony, and in final instructions, that the jury was to separately consider the defendants' charges. Further, the trial court explained that it was the prosecutor's burden to establish, beyond a reasonable doubt, that defendant did not act in self-defense. The jury found defendant guilty as charged.

Defendant now appeals.[1]

## II. ANALYSIS

## A. SEPARATE TRIALS

"[T]he decision to sever or join defendants lies within the discretion of the trial court." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994). An abuse of discretion occurs when

---

[1] In addition to the brief that defense counsel filed, defendant filed a Standard 4 brief. The briefs present identical arguments, so we address them together in this opinion.

the decision results in an outcome falling outside the range of principled outcomes. *People v Breeding*, 284 Mich App 471, 480; 772 NW2d 810 (2009).

Under MCL 768.5, "[w]hen 2 or more defendants shall be jointly indicted for any criminal offense, they shall be tried separately or jointly, in the discretion of the court." Further, MCR 6.121(C) provides that "[o]n a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant." The trial court *may* sever a trial when "severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants." MCR 6.121(D). Relevant factors for the trial court's determination "include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of witnesses, and the parties' readiness for trial." *Id*.

Severance is mandated under MCR 6.121(C) only when a defendant provides "a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *Hana*, 446 Mich at 346. Severance is not mandatory simply when antagonistic defenses are alleged, but, instead, the tension "must be so great that a jury would have to believe one defendant at the expense of the other." *Id*. at 348-349 (cleaned up). Further, the risk of prejudice may be mitigated by proper jury instructions. *Id*. at 351.

First, there was clearly judicial efficiency in trying the cases together. Holding separate trials for Brewer and defendant would have required presenting almost all of the same witnesses and exhibits, which would have been a significant drain on the parties' resources. See MCR 6.121(D). Further, there was little potential for confusion or prejudice stemming from the complexity or nature of the evidence, particularly when the trial court gave ample instructions to the jury that only Brewer, and not defendant, was charged with murder. See *id*. Moreover, both defendant's and Brewer's defenses involved claims of self-defense. Therefore, defendant failed to show that the tension between his and Brewer's defense was so strong that the jury would have had to believe one defendant at the expense of the other. See *Hana*, 447 Mich at 350. Finally, the trial court properly instructed the jury, multiple times, to consider each defendant separately. See *id*. at 351. See also *People v Mardlin*, 487 Mich 609, 629; 790 NW2d 607 (2010). Because defendant failed to demonstrate clearly, affirmatively, and fully that his substantial rights were prejudiced without separate trials, reversal is not warranted. See *Hana*, 447 Mich at 346-347.

## B. LARCENY CONVICTION

Next, defendant argues that the trial court erred by denying his motion for a directed verdict on the charge of larceny from a person because there was not sufficient evidence that he intended to permanently deprive Hayes of the gun. We review de novo a trial court's decision on a motion for a directed verdict to determine whether the evidence presented, "viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). We are "required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "[Q]uestions of intent and honesty of belief inherently involve weighing the

evidence and assessing the credibility of witnesses, which is a task for the jury." *People v Cain*, 238 Mich App 95, 119; 605 NW2d 28 (1999). "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014).

Defendant was convicted of larceny from a person, MCL 750.357, which required that the prosecutor show that defendant (1) took someone else's property; (2) without consent; (3) moved the property; (4) took the property from the victim's person or from his or her immediate presence; and (5) intended to deprive the owner of the property permanently. M Crim JI 23.3.

Although defendant argues that what others said to him does not establish his actual intention when taking the firearm, the question of intent was for the jury to decide. See *Cain*, 238 Mich App at 119. Further, "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993). It can reasonably be inferred from the testimony presented that defendant intended to deprive Hayes of his gun permanently. See *Nowack*, 462 Mich at 400. The jury heard from several witnesses about the events concerning defendant taking the gun. After defendant suddenly took the gun from Hayes, several people told defendant to return the gun. Defendant, however, kept the gun in his possession. Therefore, the trial court did not err by denying defendant's motion for a directed verdict.

## C. SELF-DEFENSE

Finally, defendant argues that the trial court erred by denying his request for a directed verdict on the basis of self-defense. Under the common law, self-defense may justify "otherwise punishable criminal conduct, usually the killing of another person, if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (cleaned up). MCL 780.972 provides:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

The touchstone of a self-defense claim is necessity. See *People v Reese*, 491 Mich 127, 144; 815 NW2d 85 (2012). Once a defendant satisfies the burden of raising the defense, the prosecutor then bears the burden of disproving it beyond a reasonable doubt. *Id*. at 155.

Defendant argues that he had a right to be in the parking lot, and the other individuals in the parking lot were threatening him. The prosecutor, however, presented sufficient evidence from which the jury could determine, beyond a reasonable doubt, that defendant was not acting in self-defense. See *Aldrich*, 246 Mich App at 122. Even if defendant felt uncomfortable during his interaction with Hayes, defendant also testified that he did not know how to walk away without everyone knowing he was scared. This does not indicate that defendant was *unable* to leave the

situation. Although a person is not "required to retreat from a sudden, fierce, and violent attack" or "from an attacker who he reasonably believes is about to use a deadly weapon," *People v Riddle*, 467 Mich 116, 119; 649 NW2d 39 (2002), defendant's reluctance to move away out of fear of people thinking that he was afraid does not equate to a determination that he was in danger or reasonably believed that he was.

Instead, defendant himself testified that Hayes had not pointed the gun at him. Hayes testified that he tried to reassure defendant that he was not causing trouble and that Hayes was leaning against a car when defendant took the gun. The jury, who was also able to see the surveillance footage, was in the best position to make credibility determinations and, here, the jury determined that defendant was not acting in self-defense. See *Nowack*, 462 Mich at 400; *Cain*, 238 Mich App at 119. Therefore, defendant is not entitled to reversal of his convictions.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young