# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

GHAZI SALAMEH MARJI,

       Defendant-Appellant.

UNPUBLISHED
March 14, 2017

No. 330193
Oakland Circuit Court
LC No. 2009-229091-FH

Before: GLEICHER, P.J., and MURRAY and FORT HOOD, JJ.

FORT HOOD, J., (*dissenting*).

I respectfully dissent. I believe that the trial court duly considered defendant's ability to pay restitution, as well as whether his failure to remit the total amount of restitution was willful or the product of good faith. I would affirm the trial court's order revoking defendant's probation.

After defendant pleaded no contest to felonious assault, MCL 750.82, the trial court sentenced defendant, a fourth-offense habitual offender, MCL 769.12, to two years' probation.[1] Defendant was also ordered to pay $22,774.42[2] in restitution, as well as other miscellaneous assessments, fees and costs. The order of restitution was to cover the significant medical expenses of the victim in this matter, Musa Yacoub. According to the record, Yacoub also missed 3 months of work following the vicious beating he suffered at the hands of defendant and defendant's son, Issa Marji.

As an initial matter, I observe that while defendant claimed at the probation violation hearing that he did not have the financial means to pay restitution beyond what he was already paying, defendant did not argue that his rights protected by the Fourteenth Amendment were

---

[1] The record reflects that defendant pleaded guilty to violating his probation in August 2011 after being in arrears for his restitution obligation. As a result, the trial court extended defendant's probation term until June 28, 2015, ordering all original conditions of probation to remain in effect.

[2] At the time of the probation violation hearing, defendant owed a total of $14,201.12 for his restitution and other fees and assessments.

-1-

violated. Accordingly, I conclude that his constitutional challenge was not preserved for appellate review. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Therefore, I would review defendant's unpreserved constitutional challenge for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

In *Bearden v Georgia*, 461 US 660, 667-668; 103 S Ct 2064; 76 L Ed 2d 221 (1983), the United States Supreme Court, after reviewing earlier precedent from that Court, articulated that a person may not be imprisoned "solely because he lacked the resources to pay [restitution]." However, the *Bearden* Court, quoting *Williams v Illinois*, 399 US 235, 242 n 19; 90 S Ct 2018; 26 L Ed 2d 586 (1970), also made it abundantly clear that an individual's imprisonment for a "willful refusal" to pay restitution will not offend constitutional guarantees. Specifically, the *Bearden* Court observed, in pertinent part, as follows:

> *If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense.* But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available. [*Id.* at 668-669 (emphasis added; footnote and citations omitted).]

In sum, the United States Supreme Court recognized the trial court's authority and responsibility in probation revocation proceedings:

> We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. *If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority.* If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment. [Footnote omitted.]

The Michigan Code of Criminal Procedure, MCL 760.1 *et seq.*, and the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq.*, contain provisions governing restitution orders.

MCL 769.1a(14)[3] provides, in pertinent part, as follows:

> [A] defendant shall not be imprisoned, jailed, or incarcerated for a violation of probation or parole or otherwise for failure to pay restitution as ordered under this section *unless the court . . . determines that the defendant has the resources to pay the ordered restitution and has not made a good faith effort to do so.* [Emphasis added.]

The governing provision of the CVRA, MCL 780.766(11) provides, in pertinent part, as follows:

> If the defendant is placed on probation . . . any restitution ordered under this section shall be a condition of that probation, parole, or sentence. The court may revoke probation or impose imprisonment under the conditional sentence and the parole board may revoke parole if the defendant fails to comply with the order and if the defendant has not made a good faith effort to comply with the order. *In determining whether to revoke probation or parole or impose imprisonment, the court . . . shall consider the defendant's employment status, earning ability, and financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay.* [Emphasis added.]

At the probation violation and sentencing hearing,[4] the trial court, obviously well familiar with defendant and this case, questioned defendant, sworn under oath, extensively before imposing sentence. Defendant told the trial court that he did not have the financial means to pay restitution, that he had owned a truck but never owned a trucking business, and that the truck had been in an accident. Defendant represented to the trial court that he did not receive any insurance proceeds following the accident. Defendant's assertions to the trial court were at times confusing, contradictory and unclear, a fact that the trial court took care to note on the record, cautioning defendant that he could not "change [his] stories all the time[.]" Defendant also asserted that he was unable to pay any more towards the restitution and costs than what he had been paying. The trial court was also aware of defendant's claims that he was subsisting on a limited income from social security benefits.

While defendant asserts that there was no evidence that he was able to pay restitution beyond the existing payments of $150 a month that he paid out of his social security income, a close review of the record supports the trial court's conclusion to the contrary. For example, on March 23, 2011, defendant filed a motion before the trial court, seeking to modify the terms of his probation order. Specifically, defendant requested that the trial court consider lifting provisions related to his home confinement so that defendant could resume employment. In his

---

[3] MCL 780.766(14) contains identical language.

[4] At the probation violation and sentencing hearing, defendant pleaded guilty to the probation violation.

-3-

motion, defendant noted that he "has had long term employment as an owner operator with Northern Steel Transport out of Toledo, Ohio." An attachment to the motion, a letter dated March 11, 2011 and signed by Sandra Moore, Safety and Recruiting Director for Northern Steel Transport Company, confirmed that defendant had been an "owner operator" with the company from 2001 to 2010. The letter also confirmed that future gainful employment for defendant with the Northern Steel Transport Company was possible. The trial court, during the probation violation hearing, also observed that defendant had appeared in court on previous occasions related to his probation, and that defendant's presentence investigation report (PSIR), reflected that defendant had "a business truck, tractor – trailer valued at $20,000[.]" A review of the PSIR, prepared in June 2010, confirms that defendant had run a trucking business as early as 2000, and that as of 2010, defendant was the "sole owner of Marji Trucking." The PSIR also listed as an asset defendant's "[b]usiness [t]ruck, [t]ractor/[t]railer" with a value of $20,000.

Accordingly, in my opinion the trial court duly considered defendant's earning ability, his assets of record, and questioned defendant thoroughly about the disposition of his trucking business. It is also very clear to me that the trial court found defendant's responses to its pointed queries to be lacking in credibility. I am mindful that this Court ought to afford due regard to the trial court's "special opportunity" to gauge the credibility of the witnesses who appear before it. MCR 2.613(C); *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). After a close review of the record as a whole, it is evident to me that the trial court concluded that defendant's failure to comply with the restitution order was willful, and the trial court had serious doubts regarding defendant's good faith in remitting restitution. While the majority posits that the trial court's ruling in this matter was in some way deficient because it did not make more specific factual findings on the record, I am of the view that the trial court fully complied with the requirements of both MCL 769.1a(14) and MCL 780.766(11).[5] Namely, the trial court questioned defendant under oath extensively in considering whether defendant had the resources to remit his court-ordered restitution payments. It is also apparent from the record that the trial court concluded that defendant was certainly less than forthcoming in his responses regarding his financial means, and therefore the trial court concluded that defendant's failure to remit payment was not the product of good faith. Unlike the facts of *Bearden*, in my view the trial court correctly recognized that this is not a case where the record supported a conclusion that defendant was making "sufficient, bona fide efforts" to seek the financial resources to remit restitution, or to "ma[ke] all reasonable efforts to pay . . . restitution[.]" *Bearden*, 461 US at 668.[6]

---

[5] While I acknowledge that MCR 6.445(E)(2) imposes certain responsibilities on the trial court during the probation violation hearing, MCL 769.1a(14) and MCL 780.766(11) govern the trial court's decision regarding revocation of probation on the basis of non-payment of restitution, and the trial court complied with these statutory provisions.

[6] The facts of this case can be distinguished from the United States Supreme Court's decision in *Bearden*. In *Bearden*, the petitioner was indigent, and had initially borrowed money from his parents to pay restitution. *Bearden*, 461 US at 662-663. The petitioner had a ninth grade education, could not read, and once he was laid off from his job, was unable to find other

On this record, where the trial court's ultimate determination fell within the range of reasonable and principled outcomes, I conclude that the trial court did not abuse its discretion in revoking defendant's probation. *People v Breeding*, 284 Mich App 471, 479; 772 NW2d 810 (2009); *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Additionally, where it is clear to me that the trial court concluded that defendant did indeed have the financial means to tender restitution, that his failure to do so was willful, and that he was not acting in good faith, I conclude that defendant's rights under the Fourteenth Amendment were protected. *Bearden*, 461 US at 672-673; *Tate v Short*, 401 US 395, 400; 91 S Ct 668; 28 L Ed 2d 130 (1971); MCL 780.766(11); MCL 769.1a(14).

Therefore, I would affirm the trial court's revocation of defendant's probation.

/s/ Karen M. Fort Hood

---

employment. *Id*. The United States Supreme Court noted that "[t]he record indicates that petitioner had no income or assets . . . ." *Id*. at 663. In contrast, it is clear in this case that the trial court found dubious defendant's claims that he did not have the financial means to satisfy the restitution order. Put another way, the record supports the trial court's conclusion that defendant could have paid the restitution order, but simply neglected to do so. Such inaction on the part of a defendant will not be protected by the constitution. *Id*. at 668.