# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JARVAS JOVON BRINKLEY,

Defendant-Appellant.

UNPUBLISHED
August 30, 2018

No. 337437
Wayne Circuit Court
LC No. 16-006408-01- FC

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of first-degree premeditated murder, MCL 750.316, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to life without parole for the first-degree murder conviction and two years' imprisonment for the felony-firearm conviction. On appeal, defendant argues that there was insufficient evidence to convict him of either crime and that he was denied a fair trial because the prosecutor elicited evidence that defendant illegally possessed the firearm used to shoot the victim. Additionally, defendant filed a Standard 4 brief, claiming he was denied the effective assistance of counsel and a fair trial due to prosecutorial misconduct. Defendant's arguments are without merit, and we therefore affirm.

Defendant's convictions arose from a shooting death that occurred in the early morning hours of May 13, 2016. The evidence at trial established that defendant attended a party at a house in Detroit. While at the party, there was a confrontation between defendant and the victim while in the house. At some point, both defendant and the victim left the house and proceeded to the driveway. There was conflicting testimony as to the events that took place in the driveway in front of the house. However, it is undisputed that defendant retrieved a handgun from his vehicle and shot the victim six times, including three shots that struck the victim's head, killing him instantly.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to convict him of first-degree premeditated murder and felony-firearm. He contends that he was acting in lawful self-defense when he shot and killed the victim and therefore is not guilty of first-degree premeditated murder. Defendant argues that the evidence showed he was threatened by the victim, who was

-1-

drunk, belligerent, aggressive, and unrelenting, which caused defendant to believe that his life was in danger. We disagree.

When reviewing a claim of insufficient evidence, this Court reviews the record de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). This Court will not interfere with the fact-finder's role in weighing the evidence and judging the credibility of witnesses. *People v Passage*, 277 Mich App 175, 177; 743 NW2d 746 (2007). "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*. It is for the trier of fact to decide what inferences can be fairly drawn from the evidence and to judge the weight it affords to those inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Circumstantial evidence and reasonable inferences drawn from the evidence may be sufficient to prove the elements of a crime. *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993).

The elements of second-degree murder are (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1988). The elements of first-degree murder are the four elements of second-degree murder plus that the death was the willful result of a premeditated, deliberate intent to kill. *People v Dykhouse*, 418 Mich 488, 501; 345 NW2d 150 (1984) (citation omitted). To "premeditate" means "to think about beforehand." *People v Morrin*, 31 Mich App 301, 329; 187 NW2d 434 (1971). The defendant must have had time to take a "second look" at his actions or "pause" between the thought and the action itself. *People* v *Abraham* (*In re Abraham*)*,* 234 Mich App 640, 656; 599 NW2d 736 (1999) (quotation marks and citation omitted). The length of that period will vary with individuals and circumstances. The test is not the duration of time, but the extent of the reflection. The prosecution may establish premeditation through evidence of (1) the parties' prior relationship, (2) the defendant's actions before the killing, (3) the circumstances surrounding the killing itself, and (4) the defendant's conduct after the killing. *People v Schollaert,* 194 Mich App 158, 170; 486 NW2d 312 (1992). The jury can infer premeditation and deliberation from the circumstances as long as the inferences are supported from the record and are not merely speculative. *People v Plummer*, 229 Mich App 293, 301; 581 NW2d 753 (1998).

Defendant claimed that he shot the victim in self-defense. In order to prove self-defense, defendant must show that he "honestly and reasonably" believed that the use of deadly force was necessary to prevent imminent death or imminent great bodily harm to himself or another individual. MCL 780.972. "A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions." *People v Heflin*, 434 Mich 482, 503; 456 NW2d 10 (1990).

The murder happened at around 3:00 a.m., outside a home where there had been a party. Several witnesses who had attended the party testified. The evidence technician, Raymond Diaz, collected five .40-caliber shell casings and four fired bullets from the scene. The ballistics expert found that all five of the .40-caliber casings were fired from the same weapon. Diaz testified that all of the casings were found next to the victim's body. Two of the recovered bullets were found under the victim's head after he was moved.

Dr. Lokman Sung, the assistant medical examiner, found six gunshot wounds. He could not determine the order in which the shots were fired. There were four gunshot wounds to the left side of the head, one to the right shoulder, and one to the right chest. The right shoulder wound entered the back of the shoulder and exited from the top of the shoulder, showing that the victim had his back turned when that shot hit him. The right chest wound entered from the front of the right chest, exited at the armpit, re-entered the right upper arm, and exited near the right elbow. One of the gunshot wounds to the head was a graze wound, but the other three were perforating wounds that went through the skull and exited. Two bullets were found underneath the victim's head when his body was moved, which showed that the body was on the ground when the shots were fired, that the bullets were fired straight down into the skull, and that the victim did not move his head. Sung also removed bullet fragments and a deformed jacketed bullet from within the head. Sung stated that all three of those bullets to the head would "be immediately fatal." Sung found a high level of alcohol in the victim's blood and breakdown products of marijuana, which he stated would not indicate recent use of marijuana.

The victim was found holding a lanyard with his keys in both hands. Diaz testified that the victim's car was locked. Diaz had to use a key from those on the lanyard recovered from the victim's hands to unlock the victim's car. Therefore, testimony from witnesses that the victim reached into his open car window and took something out was in conflict with the evidence. In addition, testimony from witnesses claiming they saw the victim fire a weapon at defendant or saw sparks from the victim's hand was in conflict with the evidence. "All conflicts in the evidence must be resolved in favor of the prosecution." *Passage*, 277 Mich App at 177.

One witness, May, testified that she saw defendant, after he fired the first shots, walk over to the victim who was on the ground, stand over the victim, and shoot the victim a few more times. Two of the witnesses, Lee and Price, had made statements to the police shortly after the incident and second statements to the prosecutor's office shortly thereafter under an investigative subpoena that echoed May's trial testimony that, after the initial shots, defendant walked over to and stood over the victim and shot him a few more times. However, at trial they both denied what was in those statements, alleging that they did not write them, they did not read them, the police made up their answers, and they only signed them because they were scared. They were evasive in their answers, and their testimony at the trial was contrary to the evidence proffered by the expert and police witnesses. The jury had the responsibility to weigh the evidence and judge the credibility of the witnesses. *Passage*, 277 Mich App at 177.

Defendant's testimony also did not agree with the evidence. He contended that he fired all the shots from behind his opened driver's side car door, which was 10 to 15 feet away from the victim. This testimony conflicted with testimony from the evidence technician and the medical examiner that the bullets fired into the victim's head must have been fired from above the victim as he was lying flat on the ground because the bullets that exited the victim's head were found under his body. The path of those bullets strongly suggested that defendant stood over the victim and fired those bullets into the skull, as May had testified. They also showed that defendant had time to premeditate, i.e., to take a second look. The bullet that entered the victim's back, which suggests the victim was running away, further undermines defendant's claim that he was in fear of imminent death or of great bodily harm.

Viewing the evidence in the light most favorable to the prosecution, and resolving all conflicts in evidence in favor of the prosecution, we find that a rational trier of fact could find that the essential elements of the crime of first-degree murder were proven beyond a reasonable doubt and that defendant did not act in self-defense.

## II. EVIDENCE OF ILLEGAL FIREARM

Next defendant argues that he was denied a fair trial when the lower court denied his motion to exclude evidence that the gun defendant used to kill the victim was illegally possessed. Defendant argued that the evidence should have been excluded under MRE 402 as not relevant because it would not tend to make the existence of any fact that was of consequence to the determination of the action more or less probable than it would be without the evidence. Defendant further argues that the evidence should have been excluded under MRE 403 as more prejudicial than probative. He contends that the evidence was meant to persuade the jury to find him guilty and it was likely that the evidence swayed the jury away from a not guilty verdict. Defendant concluded that it is more probable than not that a different outcome would have resulted without the error. We disagree.

This Court reviews a trial court's decision to admit or exclude evidence of an abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1996); *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995). A trial court abuses its discretion when its decision results in an outcome outside a range of principled outcomes. *People v Breeding*, 284 Mich App 471, 479; 772 NW2d 810 (2009). The abuse of discretion standard acknowledges that there are circumstances in which there is no one correct outcome. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). If the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion. *Id*. "However, decisions regarding the admission of evidence frequently involve preliminary questions of law, such as whether a rule of evidence or statute precludes admitting of the evidence." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "This Court reviews questions of law de novo." *Id.*

As we already stated, there was sufficient evidence for the jury to find that all of the elements of first-degree murder were proven beyond a reasonable doubt. The credibility of several of the witnesses was certainly in question given the disparity between their statements to the police and the prosecutor and their testimony in court. The evidence of how the six shots entered the victim's body and where the casings were found proved beyond a reasonable doubt the issue of premeditation. The evidence also showed that the victim was lying motionless on the ground when the shots to his head were fired, negating any possible threat to defendant in support of a self-defense claim. We find that, even if the evidence that the gun used by defendant was possessed illegally had been excluded, it is not probable that the jury's verdict would have been different based on the overwhelming evidence establishing premeditation and negating self-defense. Therefore, even if the trial court abused its discretion in admitting the evidence that defendant's possession of the gun was illegal, defendant cannot demonstrate that the trial court's decision resulted in a miscarriage of justice. MCL 769.26. Defendant's credibility was undermined more by the forensic evidence than by the evidence of illegal possession, which, in any event, the prosecutor only mentioned briefly during closing argument. Defendant was not denied a fair trial by the admission, over defendant's objection, of evidence that the gun used by defendant was illegally possessed.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

In a supplemental brief filed *in propria persona*, pursuant to Supreme Court Administrative Order No. 2004–6, Standard 4, defendant argues he was denied the effective assistance of counsel. We disagree.

Defendant did not preserve a claim of ineffective assistance of counsel by moving, in the trial court, for a new trial or an evidentiary hearing under *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).[1] Therefore, defendant's ineffective assistance of counsel claims are reviewed for errors apparent on the record. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). A claim of ineffective assistance of counsel is a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo. *Id*.

"Effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (quotation marks and citation omitted). To succeed on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance did not meet an objective standard of reasonableness under prevailing professional norms, (2) there is a reasonable probability that, but for counsel's errors, the results of the proceeding would be different, and (3) the result that did occur was fundamentally unfair or unreliable. *Lockett*, 295 Mich App at 187.

Defendant first argues that his trial attorney erroneously advised him that he had a viable defense of self-defense, which caused defendant to reject a plea offer from the prosecutor prior to trial. On the third day of trial, outside the presence of the jury, the prosecutor again presented the plea offer. If defendant would plead guilty to a reduced count of second-degree murder and felony-firearm, the prosecutor would recommend a sentence of 8 to 15 years for the murder conviction plus two years for felony-firearm, for a minimum sentence of 10 years. Defendant's attorney questioned defendant on the record concerning their discussion of, and defendant's decision in rejecting, this offer. On appeal, defendant argues that he only rejected the plea offer because his attorney told him he had a viable defense of self-defense. Defendant argues that a competent attorney would never have told him he had a good case in light of the facts and law against him. Defendant argues that a competent attorney would have informed him that self-defense was not a viable defense in this case and, had his attorney been honest with him, defendant would have accepted the plea and the outcome of the case would have been more favorable to him.

We find nothing in the record that supports defendant's claim that his attorney misled him to believe that his claim of self-defense was so strong that defendant would be acquitted and should reject the plea offer. Instead, the record shows that, in questioning before the court, defendant agreed that his attorney explained all the good and bad aspects of his case, that defense counsel promised defendant that he would work on his behalf to go to trial or to get the best plea

---

[1] Defendant's motion to remand for a *Ginther* hearing was denied by this Court.

deal possible, that defendant had an opportunity to deliberate about all the factors without any influence from his attorney, and that he had discussed the plea deal with his mother. Further, defendant assured the court that he understood all the issues and understood that his rejection of the plea offer was his decision alone. Obviously, if defendant had accepted the plea offer, the outcome of the case would have been different for him. However, there is nothing on the record to show that his counsel did anything untoward that led defendant to reject the offer.

Defendant's second claim of ineffective assistance of counsel arose on the fourth day of trial, just prior to the prosecutor's rebuttal closing argument. Juror number 11 told the court that as she was walking down the hallway of the courthouse on the second day of the trial, someone asked her, "Oh, you guys ready to go home, right? Are you ready to say guilty?" Juror number 11 stated that when it happened she just kept walking but she did feel "a little nervous walking to my car after that." She did not take that statement as a "serious threat," but some people that she talked to told her she should tell a court officer. The court opined that it did not sound like a serious threat but more like "somebody doing something stupid." When asked, juror number 11 stated that this incident would not affect her decision. She then reported that she had mentioned this to two other jurors, one she remembered and one she did not. Therefore, the court brought the remainder of the jury into the courtroom and asked them if anything had happened, outside of the evidence and trial, to make them feel intimidated or that would cause any one of them not to be impartial or able to make a fair and impartial verdict based on the evidence. Upon getting no response, the court proceeded with the trial. Juror number 11 also reported that she was not sure she could recognize the person who said that to her. The court told juror number 11 that she should look around the courtroom during the day's session to see if she recognized the person, and he would speak to her about it after the end of the session. However, there is no evidence on the record that juror number 11 was ever questioned about that again. Defendant argues that he was denied the effective assistance of counsel because his attorney failed to move for a mistrial or ask for a curative instruction. Defendant contends that a mistrial should have been granted because this irregularity was prejudicial to his rights and impaired his ability to get a fair trial. Defendant contends that his attorney's failure to move for a mistrial was unreasonable and not sound trial strategy. Defendant avers that if his counsel had moved for a mistrial or asked for a curative instruction, there is a "reasonable probability" that he would have been found guilty of a lesser included offense or granted another trial. Defendant does not support this statement with any legal authority.

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497(1995) (citations omitted). A mistrial is only appropriate when the prejudicial effect of an error cannot be cured in any other way. *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). Defense counsel is not ineffective for failing to pursue a futile motion. *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008).

The record clearly shows that none of the jurors felt intimidated for any reason, and all believed they would be able to render a fair and impartial verdict from the evidence. Defendant has failed to demonstrate that this incident was so prejudicial that it impaired his ability to get a fair trial. Defendant has not made a compelling argument that there was any need for a curative instruction. Also, defendant has not suggested what kind of curative instruction he believed his attorney should have asked to be given to the jury. Defendant must "overcome the strong

presumption that [defense] counsel's action constituted sound trial strategy under the circumstances." *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Michigan courts have held that "there are times when it is better not to object and draw attention to an improper comment[.]" *Bahoda*, 448 Mich at 287, n 54. Defendant cannot meet his burden of showing that but for counsel's performance, there is a reasonable probability that the result of the proceeding would be different. *People v Yost*, 278 Mich App 341, 387; 749 NW2d 753 (2008).

Defendant's final claim of ineffective assistance of counsel is based on his contention that there was prosecutorial misconduct and his attorney failed to object. At trial, the prosecutor asked one of the witnesses if defendant ever threatened her, and she said no. This was not in conformity with the statements she gave to the police and the prosecutor before trial. The prosecutor directed the witness to her statement given during her investigative subpoena, specifically that the witness had stated that defendant called her the day after the shooting, threatened her, and she hung up on him. At the trial, she testified that was not true; defendant never had her phone number and she never had defendant's phone number. The court instructed the jury:

> The out-of-court statement is not what the jury has to worry about what she said out of court. It's in court. The only purpose of the out-of-court statement is to determine whether or not this jury feels she's telling the truth here in court.
>
> The evidence that we have – we said you have to base your judgment on the evidence is what she says in court this afternoon. The out-of-court statements have been brought in as you see to show there is a difference. The question you have to answer is whether because of those statements you believe what she's saying in court.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted). Prosecutorial-misconduct issues are decided case by case, and the reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context." *People v Abraham*, 256 Mich App 265, 272-273; 662 NW2d 836 (2003) (citations omitted).

The prosecutor's question was not improper. "A defendant's threat against a witness is generally admissible. It is conduct that can demonstrate consciousness of guilt." *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996); see also *People v Kelly*, 231 Mich App 627, 640; 588 NW2d 480 (1998). "[I]t is for the jury to determine the significance of a threat in conjunction with its consideration of the other testimony produced in the case." *Scholl*, 453 Mich at 740. Because a defendant's threat against a witness is generally admissible, it was not prosecutorial misconduct for the prosecutor to ask the witness if she had been threatened by the defendant. Therefore, there was no prejudice to defendant when defense counsel failed to object to the prosecutor's question. Defense counsel is not ineffective for failing to pursue a futile motion. *Brown*, 279 Mich App at 142. In addition, the witness testified that she had not been

threatened by the defendant and denied that she had said so in her statements to the police and the prosecutor.

We hold that defendant has failed to demonstrate that his counsel's performance did not meet an object standard of reasonableness under prevailing professional norms, or that there is a reasonable probability that, but for counsel's errors, the results of the proceeding would be different, and the result that did occur was fundamentally unfair or unreliable. *Lockett*, 295 Mich App at 187.

Affirmed.

/s/ Thomas C. Cameron
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel