*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HENRY SALIM SNYDER,

        Defendant-Appellant.

UNPUBLISHED
November 9, 2021

No. 354747
Eaton Circuit Court
LC No. 2018-020255-FH

Before: SWARTZLE, P.J., and SAWYER and LETICA, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the trial court's order sentencing him to a prison term of three to five years for attempted assault with intent to do great bodily harm less than murder following the revocation of his probation. We affirm the trial court's finding that defendant violated his probation terms, but vacate his sentence and remand for proceedings consistent with this opinion.

## I. BACKGROUND

This case arises out of defendant's assault of his ex-wife. Defendant was initially charged with assault with intent to do great bodily harm less than murder (count 1), domestic violence (count 2), and attempted assault with intent to do great bodily harm less than murder (count 3). Defendant entered into a plea agreement in which he pleaded *nolo contendere* to counts 2 and 3; an order of *nolle prosequi* was entered as to count 1. Defendant's plea was entered under a *Cobbs*[2] agreement under which the trial court would sentence defendant to 30 to 90 days in jail, and a *Killebrew*[3] agreement under which defendant would serve five years of probation and his sentence

---

[1] *People v Snyder*, unpublished order of the Court of Appeals, entered November 3, 2020 (Docket No. 354747).

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

[3] *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982).

would be capped at five years. The trial court sentenced defendant to jail for 90 days and five years of probation. One of the defendant's probation terms prevented him from having any contact with his ex-wife "either directly or through another person."

In October 2019, defendant's divorce attorney had a meeting with Ina O'Briant, the divorce attorney for defendant's ex-wife. Defendant entered the room where this meeting was taking place and attempted to speak directly to O'Briant. Defendant's attorney planned to withdraw as defendant's counsel but had not done so at the time defendant attempted to speak with O'Briant, so O'Briant obtained counsel's permission to speak with defendant about the divorce proceeding. Defendant's attorney left, leaving defendant and O'Briant in the room alone. According to O'Briant, defendant followed her out of the conference room and down the elevator. When they stopped outside the building, defendant began to ask O'Briant to tell his ex-wife that he loved her and did not want to be divorced. O'Briant told defendant that he could not send messages to his ex-wife through her; O'Briant and defendant eventually went in separate directions. O'Briant informed the probation department about this incident a few months later.

The trial court held a probation-violation hearing. O'Briant testified that defendant attempted to contact his ex-wife through her. In addition, a victim advocate with a shelter where defendant's ex-wife was staying testified that O'Briant contacted her after the incident and told her that defendant attempted to send messages to his ex-wife through her. Defendant also testified, explaining that he did not attempt to contact his ex-wife through O'Briant, he did not "care about the money," and he and his ex-wife needed to be focused on their children.

The trial court concluded that defendant violated his probation terms and revoked probation. Although defendant's guidelines-sentencing range was zero to nine months in jail, the trial court sentenced defendant to a prison term of three to five years for his attempted-assault conviction. Defendant filed a motion for reconsideration and correction of sentence, which the trial court denied. This appeal followed.

## II. ANALYSIS

### A. PROBATION VIOLATION

First, defendant argues that the trial court clearly erred by finding that he violated probation. We review a trial court's factual findings for clear error. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016). We review de novo the interpretation of a statute or court rule. *People v Parker*, 319 Mich App 664, 669; 903 NW2d 405 (2017).

"The Legislature has long described a trial court's decision to grant probation as a matter of grace." *People v Bensch*, 328 Mich App 1, 6; 935 NW2d 382 (2019), quoting *People v Sattler*, 20 Mich App 665, 669; 174 NW2d 605 (1969). Probationers, however, "are afforded certain due process at violation hearings because of the potential for loss of liberty." *People v Pillar*, 233 Mich App 267, 269; 590 NW2d 622 (1998). "Specifically, a probationer has the right to a procedure consisting of (1) a factual determination that the probationer is in fact guilty of violating probation, and (2) a discretionary determination of whether the violation warrants revocation." *Id*.

"A trial court must base its decision that a probation violation was proven on verified facts in the record." *People v Breeding*, 284 Mich App 471, 487; 772 NW2d 810 (2009). "The evidence, viewed in a light most favorable to the prosecution, must be sufficient to enable a rational trier of fact to find a probation violation by a preponderance of the evidence." *Id*. "Where resolution of a factual issue turns on the credibility of witnesses or the weight of evidence, deference is given to the trial court's resolution of these issues." *Id*.

The prosecutor presented evidence clearly establishing that defendant attempted to contact his ex-wife through O'Briant, which violated defendant's probation terms. Although defendant argues that he believed he was acting *in propria persona* at the time he spoke with O'Briant, defendant testified that O'Briant had told him during this conversation that he needed to find a different attorney. Thus, there is evidence that defendant knew or should have known that his attorney had not formally withdrawn as counsel at the time the conversation with O'Briant occurred. Even if defendant did not know that his attorney had not formally withdrawn as counsel, O'Briant told defendant that he could not send messages to his ex-wife through her. To the extent defendant argues that O'Briant's testimony was inconsistent and conflicted with defendant's account of the events, we defer to the trial court's witness-credibility determinations that O'Briant and the victim advocate were more credible than defendant. See *Breeding*, 284 Mich App at 487. Finally, defendant's arguments that O'Briant strategically waited to notify probation of defendant's conduct to benefit defendant's ex-wife in the divorce proceedings has no effect on whether defendant actually violated his probation terms. Thus, the trial court did not err by finding that defendant violated probation.

## B. PRESENTENCE INVESTIGATION REPORT

Next, defendant argues that he is entitled to resentencing on the basis that the trial court failed to consider his "January 2020 [presentence-investigation report]" and failed to comply with the presentence-investigation report requirements of MCR 6.445(G) and MCR 6.425(E) at his probation-violation sentencing. Defendant's argument is hard to follow because the January 2020 document he refers to is a probation-violation report, not a presentence-investigation report,[4] but he cites court rules requiring the trial court to consider an updated presentence-investigation report at sentencing. Defendant, however, fails to argue that reversal is warranted because he was sentenced without an updated presentence-investigation report; rather, he argues only that reversal is warranted because the trial court failed to consider the information contained in the probation-violation report. Consequently, any argument that reversal is warranted because defendant was sentenced without an updated presentence-investigation report is abandoned. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

With regard to the probation-violation report, defendant argues that "the record is bare of any reference to" this report. Defendant is incorrect. "[W]hen it comes to sentencing, it is not particularly important how the information gets before the trial court; rather, it is important that the trial court have the relevant information available for sentencing." *People v Odom*, 327 Mich App 297, 313; 933 NW2d 719 (2019). The prosecutor and defense counsel both referenced the

---

[4] We will refer to this document as the probation-violation report from this point forward.

probation-violation report at sentencing. The prosecutor referenced the report's 14-day sentencing recommendation, and defense counsel expressed concern that defendant's probation officer did not write the report. Consequently, defendant's contention that the record fails to refer to the probation-violation report is incorrect.

At sentencing, the trial court asked the prosecutor and defense counsel what sentence they each thought was appropriate. This question prompted a discussion of information contained within the probation-violation report. The probation-violation report detailed defendant's recommended sentencing guidelines, along with the recommendation of the Michigan Department of Corrections that defendant's probation be continued and that he be sentenced to serve 14 days in jail. The report noted that defendant recently began working at a Lexus dealership. It also detailed defendant's progress in his domestic-violence intervention classes. Thus, the record shows that the trial court did consider the information contained in the probation-violation report and, therefore, defendant is not entitled to resentencing on the basis that the trial court failed to consider that information.

## C. DEPARTURE SENTENCE

Finally, defendant argues that in departing from defendant's applicable sentencing-guidelines range, the trial court rendered an unreasonable sentence. When a trial court revokes a defendant's probation, "it may sentence the defendant 'in the same manner and to the same penalty as the court might have done if the probation order had never been made.' " *People v Hendrick*, 472 Mich 555, 562; 697 NW2d 511 (2005), quoting MCL 771.4 (emphasis omitted). "[R]evocation of probation simply clears the way for a resentencing on the original offense." *People v Kaczmarek*, 464 Mich 478, 483; 628 NW2d 484 (2001).

We review a departure sentence for "reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn* 435 Mich 630, 636; 461 NW2d 1 (1990) . . . ." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (*Steanhouse II*) (citation omitted). "The nature of the offense and the background of the offender" must be taken into account when making this assessment. *Id*. at 472, quoting *Milbourn*, 435 Mich at 651.

Trial courts must consult the sentencing guidelines when imposing a sentence, but " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Id*. at 474-475, quoting *Milbourn*, 435 Mich at 661. In imposing an out-of-guidelines sentence, "a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence [i.e., one within the guidelines,] would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). Nevertheless, our Supreme Court has expressly rejected dicta suggesting a "presumption[] of unreasonableness for out-of-guidelines sentences." *Steanhouse II*, 500 Mich at 474. Rather, the principle of proportionality simply "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636; see also *Steanhouse II*, 500 Mich at 474. "[R]elevant factors for determining whether a

departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Dixon-Bey*, 321 Mich App at 525 (quotation marks and citations omitted). But "this is not to say that the trial court must explain why it chose a twelve-month departure as opposed to an eleven-month departure (or indeed as opposed to any one of countless other potential departures)." *People v Babcock*, 469 Mich 247, 260 n 14; 666 NW2d 231 (2003). "Rather, the trial court must simply explain why the actual departure that it imposed is justified." *Id*. See also *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008).

The trial court provided three explanations for the sentence it imposed in this case. First, that defendant "systematically tr[ied] to destroy" his ex-wife because she did not want to stay married to him. This statement was not supported by facts in the record before us, but it might have been drawn from the divorce proceedings involving defendant and his ex-wife. Second, that the trial court doubted that probation could protect defendant's ex-wife from him and opined that prison was necessary to protect her. Third, that defendant lied at the hearing when he said that his efforts in the divorce proceedings were about his children and not money. Yet again, the trial court apparently drew on information outside of the record before us and instead considered evidence from defendant's divorce proceedings.

These three factors might well justify a departure sentence, but the trial court imposed a departure sentence that was four times longer than the high end of defendant's applicable-guidelines range. A trial court must explain why a specific departure sentence is justified based on information in the record. *Babcock*, 469 Mich at 260 n 14. The trial court quadrupled the recommended guidelines sentence in this case; such a departure requires a more extensive explanation than the trial court gave here. Thus, we vacate defendant's sentence and remand for resentencing.

## III. CONCLUSION

For the reasons stated in this opinion, we affirm the trial court's finding that defendant violated his probation terms, but vacate his sentence. On remand, the trial court must resentence defendant. If the trial court chooses to impose a departure sentence, then it must explain the reasons for its departure sentence in greater detail. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Anica Letica

-5-