*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RYAN ANTHONY HOFFMAN,

        Defendant-Appellant.

UNPUBLISHED
February 19, 2025
10:25 AM

No. 372133
Jackson Circuit Court
LC No. 2023-005186-FC

Before: GADOLA, C.J., and CAMERON and ACKERMAN, JJ.

PER CURIAM.

Defendant Ryan Anthony Hoffman is charged with two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), one count of accosting a child for immoral purposes, MCL 750.145a, and one count of indecent exposure, MCL 750.335a. Following an evidentiary hearing, the trial court granted in part and denied in part defendant's motion to admit evidence contrary to the rape-shield statute, MCL 750.520j. Defendant now appeals by leave granted,[1] arguing that the trial court abused its discretion in denying his motion to admit evidence. We reverse and remand.

This case arises out of defendant's alleged sexual abuse of his minor daughter, AK. Defendant and AK's mother lived separately since AK was born. Defendant was in the army and was required to move frequently. Throughout her life, AK lived with her mother and her mother's boyfriend, JC, in Michigan and periodically visited defendant both in Michigan and other states where defendant was stationed.

Defendant eventually moved back to Michigan, and AK began visiting defendant more frequently at his home in Jackson. AK alleges that four separate incidents of sexual misconduct or abuse occurred at defendant's house when she was around nine or ten years old. The incidents underlying the two charges for CSC-I are defendant touching AK's vagina and, on one occasion,

---

[1] *People v Hoffman*, unpublished order of the Court of Appeals, entered September 20, 2024 (Docket No. 372133).

digital penetration. Two separate incidents involving defendant exposing himself to AK are the bases for the charges of accosting a child and indecent exposure.

Defendant filed a pre-trial motion requesting the trial court admit evidence of AK's sexual conduct with another child to bolster the defense that AK fabricated the allegations against defendant. During an evidentiary hearing on the motion, AK testified that, after the alleged abuse from defendant, when she was ten or eleven years old, she got in trouble for touching JC's daughter's "[p]rivates" over her clothing. AK testified that she believed her behavior was "okay" because of defendant's similar sexual abuse towards her, but afterwards she realized it was not okay. Child Protective Services (CPS) opened an investigation and a safety plan was put into place requiring the girls to interact only with adult supervision. According to AK's mother, OB, they moved out of JC's home for a couple weeks while the case was ongoing, but shortly thereafter moved back into JC's home. The CPS case was eventually closed.

OB testified that AK told her about defendant's alleged abuse in August 2022, and that the disclosure happened around the same time as the CPS case involving JC's daughter. AK confirmed that she made the disclosure to her mother when they had moved out of JC's home. AK testified that she believed JC allowed them to move back into his house because AK disclosed the sexual abuse by defendant. AK testified to the aftermath of the touching incident with JC's daughter as follows:

> *Q*. Okay. And what—did you get in trouble when your mom found out?
>
> *A*. Yeah.
>
> *Q*. What did she do?
>
> *A*. She just told me not to do it again, and I—because I know it's wrong that it happened to me.
>
> *Q*. Okay. So your mom finds out and you kinda get yelled at. Is that fair to say?
>
> *A*. Yeah.
>
> *Q*. Did you get grounded?
>
> *A*. Yeah, for a like a week, but.
>
> *Q*. Did your mom's boyfriend know you got grounded?
>
> *A*. I don't know.
>
> *Q*. Okay. But at that point he didn't know, correct?
>
> *A*. No, my mom told him.
>
> *Q*. Okay. Were you present when your mom told him or no?

*A.* No.

*Q.* Okay. So you don't know how he found out, but at some point he found out?

*A.* Yeah.

*Q.* Okay. And what happened once he found out?

*A.* We got kicked out…. And my sister[2] couldn't stay at the house anymore.

\*\*\*

*Q.* How did you feel getting kicked out of the house?

*A.* I don't know.

*Q.* Okay. Would you say it's worse than when you got yelled at by mom?

*A.* Yeah.

*Q.* By a little or a lot?

*A.* A lot.

*Q.* Okay. And after you told Addison[3] what you say your dad did and your mom found out, you got to move back into [JC]'s house, right?

*A.* Yeah.

*Q.* Do you remember how soon? Right after?

*A.* No.

*Q.* Okay. But it was close in time, correct?

*A.* Yeah.

*Q.* Okay. Because they didn't blame you anymore, correct?

*A.* Yeah.

---

[2] AK refers to JC's daughter as her "sister."

[3] Addison is AK's aunt, to whom AK first disclosed defendant's alleged sexual abuse.

However, JC testified differently: the mother of JC's daughter wanted the girls to be separated while the CPS visits were ongoing, and thus OB and AK stayed with OB's mom for a couple of weeks. JC did not believe AK should be punished for the incident with his daughter.

Defendant argued that AK's testimony was probative of a motive for AK to fabricate sexual-abuse allegations against defendant and, therefore, should be admitted as an exception to MCL 750.520j. Following the evidentiary hearing, the trial court issued its oral decision, ultimately denying admission of the evidence regarding AK's incident with JC's daughter. The trial court stated:

> . . . [T]he defendant certainly illustrates a—relevance to the timing of the touching incident with the disclosure, as it seems to have occurred in a period of time after the children were safety planned away from one another.
>
> So I do certainly understand the request to have this admitted, and the materiality that's been argued by [defense counsel] on behalf of his client.
>
> I think the next prong of this test is what gives the Court the most difficulty in making the decision, because this information is clearly something that falls soundly within the rape-shield exclusion. And I do think that the—the information would certainly be so prejudicial and the—the prejudicial nature of the information about the complaining witness and the . . . behavior with the other child in the home . . . certainly outweighs any probative value that it has.
>
> So I do find that this evidence falls squarely within the rape-shield exclusion, and the prejudicial nature of it outweighs the probative value. So I'm denying the admissibility of that piece of evidence after considering the testimony and the case law.

Defendant argues that the trial court abused its discretion in denying defendant's motion because while the evidence is seemingly restricted under MCL 750.520j, defendant's right to present a defense is implicated so it must be admitted. Defendant asserts it is probative of AK's ulterior motive for making false charges against defendant, and the probative value of the evidence is not substantially outweighed by its prejudicial nature.

"The decision whether to admit evidence is within the trial court's discretion[.]" *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). This Court only reverses such decisions when there is an abuse of discretion. *Id*. An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes. *People v Breeding*, 284 Mich App 471, 479; 772 NW2d 810 (2009). This Court reviews de novo questions of law, such as "whether a rule of evidence or statute precludes admissibility of the evidence," *Lukity*, 460 Mich at 488, and "[w]hether a defendant was denied his constitutional right to present a defense," *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

The Confrontation Clause of the Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him . . . ." US Const, Am VI.  See also *Crawford v Washington*, 541 US 36, 38; 124 S Ct 1354; 158 L Ed 2d 177 (2004).  "By its straightforward terms, the Confrontation Clause directs inquiry into two questions: (1) Does the person in controversy comprise a 'witness against' the accused under the Confrontation Clause; and (2) if so, has the accused been afforded an opportunity to 'confront' that witness under the Confrontation Clause?"  *People v Fackelman*, 489 Mich 515, 562; 802 NW2d 552 (2011).

Generally, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." MRE 401.  A trial court may exclude admissible evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403.  "Unfair prejudice" exists when "there is a danger that the evidence will be given undue or preemptive weight by the jury" or when "it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

MCL 750.520j, also referred to as the "rape-shield law," *People v Arenda*, 416 Mich 1, 5; 330 NW2d 814 (1982), prohibits evidence of a victim's sexual activity unrelated to the alleged incident and provides for two exceptions:

(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted . . . unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

"By enacting a general exclusionary rule, the Legislature recognized that in the vast majority of cases, evidence of a rape victim's prior sexual conduct with others, and sexual reputation, when offered to prove that the conduct at issue was consensual or for general impeachment is inadmissible." *People v Hackett*, 421 Mich 338, 347-348; 365 NW2d 120 (1984), citing *Arenda*, 416 Mich at 10.  However, this statute is not "a declaration that evidence of sexual conduct is never admissible." *Id*. at 348.  "In addition to the numerated exceptions within the rape-shield statute, evidence of a complainant's sexual conduct may be admitted to preserve the defendant's constitutional right to confrontation." *People v Sharpe*, 502 Mich 313, 325 n 6; 918 NW2d 504 (2018).  "[I]n certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation." *Hackett*, 421 Mich at 348.  For example, "evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge." *Id*.

The determination of admissibility is entrusted to the sound discretion of the trial court. In exercising its discretion, the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation. [*Id*. at 349.]

The procedure when evaluating the admissibility of evidence under MCL 750.520j requires the trial court to first evaluate defendant's offer of proof for a "sufficient showing of relevancy," and next order "an *in camera* evidentiary hearing to determine the admissibility of such evidence . . . ." *Id*. at 350.

Defendant sought to admit AK's incident of touching JC's daughter's private parts over her clothing; admission of such evidence is plainly prohibited under MCL 750.520j(1), and it does not fall under either exception within the statute. Thus, the trial court did not abuse its discretion by finding that the evidence fell within the rape-shield statute. However, evidence of specific instances of a victim's sexual conduct may be admissible if it is "required to preserve a defendant's constitutional right to confrontation," including circumstances in which this evidence is "probative of a complainant's ulterior motive for making a false charge." *Hackett*, 421 Mich at 348. Defendant's constitutional right to confrontation is implicated because AK is a witness against defendant, and defendant must be afforded an opportunity to 'confront' AK by cross-examining her about her motives, which may include the incident of AK touching another child. See *Fackelman*, 489 Mich at 562.

The trial court excluded evidence of AK's touching because it believed that the prejudicial nature of the evidence outweighed its probative value. Defendant argues that the trial court erred in applying the standard found in MCL 750.520j and not applying the standard of MRE 403. The trial court, in concluding that the prejudicial value of the evidence outweighed its probative value, relied on language found in the rape-shield statute. See MCL 750.520j(1) ("Evidence of specific instances of the victim's sexual conduct…shall not be admitted . . . unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value . . . ."). This is a different standard than MRE 403. See *People v Adair*, 452 Mich 473, 481; 550 NW2d 505 (1996) ([T]he "rape-shield statute reflects [the] evidentiary postulate [of MRE 403], but with a significant modification"). According to MRE 403, a trial court may only exclude relevant evidence if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needless presentation of cumulative evidence.

Under either standard, MRE 403 or MCL 750.520j, the trial court's finding that unfair prejudice outweighed the evidence's probative value was erroneous because the evidence was not unfairly prejudicial. "The weighing of evidence's probative value against its prejudicial effect requires a balancing of several factors, including the necessary time to present the evidence, whether the evidence is needlessly cumulative, how directly probative the evidence is, how necessary the fact to be proven by the evidence is, whether the evidence would mislead the jury, and whether there is an alternative and less potentially harmful way to prove the fact." *Sharpe*, 502 Mich at 331-332. Evidence is unfairly prejudicial when there exists a danger that marginally

probative evidence will be given undue weight by the jury. *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017).

Evidence of AK's touching of JC's daughter is embarrassing to AK and JC's daughter, but it is not unfairly prejudicial. There is no dispute that the touching occurred; AK testified to the events, and there was a CPS investigation. Additionally, it is the timeline of the discovery of AK's touching, i.e., that AK made the allegations against defendant after JC kicked them out of his house, and not the details of the touching, that is relevant to defendant's theory that AK has falsely accused him. Thus, at trial, detailed specifics will not need to be presented so there is not a risk of wasting time or presenting cumulative evidence.

The trial court stated that, although "defendant certainly illustrates a—relevance to the timing of the touching incident with the disclosure," the trial court ultimately found its prejudicial nature outweighed its probative value. Although the record supports the trial court's finding regarding the relevancy of the evidence, the trial court's finding that the prejudicial nature of the evidence outweighs its probative value fell outside the range of principled outcomes. See *Breeding*, 284 Mich App at 480. While the temporary move out of JC's house was not *objectively* because of JC's negative feelings toward AK for her conduct with his daughter, AK's *subjective* belief surrounding the reason for the move was probative of a possible motivation to make false charges against defendant. See *Hackett*, 421 Mich at 348. The record demonstrates that OB found out about the incident between AK and JC's daughter in August 2022. She testified that she and AK moved out of JC's house temporarily because JC's daughter's mother wanted AK and JC's daughter to be separated "for a little while." AK believed that JC, upon finding out that she had touched his daughter, kicked her out of the house, and it was during the time that AK and her mother were not living with JC that AK made the allegations against defendant. Furthermore, AK and her mother moved back into JC's house a short time after AK made the allegations against defendant. This evidence has a tendency to make it more probable that AK made the allegations against defendant so that she would not be, or remain, in trouble for her conduct toward JC's daughter, and thus this evidence is probative.

The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. See MRE 403. Unfair prejudice does not mean merely damaging. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). The evidence of AK's touching incident, as well as the time line of when AK disclosed defendant's sexual abuse and temporarily moved out of JC's house, is of consequence in determining whether AK made false charges against defendant. See MRE 401. The mere fact that the mention of the evidence may be damaging of the jury's impression of AK is not enough to make the evidence unfairly prejudicial. See *Mills*, 450 Mich at 75.

The prosecutor argues that the probative value of the evidence is substantially outweighed by a danger of confusing the issues or misleading the jury because of AK's inability to sequence events and the fact that AK's testimony is contradicted by the testimonies of JC and OB. Although the testimonies of AK, OB, and JC are not identical with respect to the time line of this evidence, they are not contradictory, and therefore, the probative value of the evidence is not substantially outweighed by a danger of confusing the issues or misleading the jury either. See MRE 403.

Reversed and remanded for entry of an order granting defendant's motion to admit evidence of the complainant's touching incident. We do not retain jurisdiction.


/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Matthew S. Ackerman